# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Randy M. Mastro
Direct: +1 212.351.3825
Fax: +1 212.351.5219
RMastro@gibsondunn.com

Client: 20858-00001

December 30, 2016

VIA ECF

The Honorable Richard M. Berman
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Citizens Union et al. v. The Governor of the State of New York*, No. 16 Civ. 9592 (RMB); *ACLU et al. v. Agata*, No. 16 Civ. 9854 (RMB)

Dear Judge Berman:

I write as counsel for Plaintiffs Citizens Union of the City of New York and Citizens Union Foundation, Inc. of the City of New York (together, "Plaintiffs" or "Citizens Union"), which we are representing pro bono in this litigation. We submit this letter pursuant to the Court's December 26 order instructing the parties in both cases to make written submissions addressing the enactment of New York Executive Law Sections 172-e and 172-f and the existence of any similar legislation elsewhere.

## The Enactment of Sections 172-e & 172-f

Your Honor ordered us to provide our "informed understanding as to why and how New York Executive Law Sections 172-e and 172-f were enacted." Dkt. 14, at 2.[1] Unfortunately, we and the public at large have been kept largely in the dark regarding the purpose and process by which Sections 172-e and 172-f became part of this legislation. As detailed in Plaintiffs' Complaint, the bill containing these provisions was passed in a single day, without debate, and under a Message of Necessity from the Governor that has yet to be made available for public inspection.[2] *See* Dkt. 1, ¶¶ 29–36. And though Citizens Union's

---

[1] Docket citations in this letter are to the docket in *Citizens Union v. The Governor of the State of New York*, No. 16 Civ. 9592 (RMB).

[2] Citizens Union will seek targeted discovery on the existence and scope of the government's interest in obtaining donor disclosures from covered organizations, and the interest's relationship to the amount of burdened speech, both of which are vital to analyzing the facial overbreadth of the statutes. *See Free Speech Coalition, Inc. v. Attorney General*, 677 F.3d 519, 538 (3d Cir. 2012) (remanding First Amendment claim for further proceedings to allow plaintiffs "to conduct discovery and develop the record" regarding whether, *inter alia*, the law was facially overbroad). Plaintiffs will need, for example, basic documents like the bill jacket, message of necessity, and

# GIBSON DUNN

December 30, 2016
Page 2

Executive Director attended meetings with the Governor and other civic leaders in late May and early June 2016 to discuss campaign finance reform, the subject of donor disclosure provisions for 501(c)(3) and 501(c)(4) organizations was never raised.  *See id.* at ¶ 33.  We have, however, endeavored to provide the Court with our understanding of the relevant history from available public sources, such as they are.

When Governor Cuomo announced on June 8, 2016, that he planned to introduce legislation that would bring needed changes to state laws governing campaign finance and the electoral activities of certain organizations, his office distributed a press release summary of the initiative, a counsel opinion, and a transcript of a speech given at Fordham Law School.[3]  Each of these releases shows a concern for the amount of money spent in influencing elections, as well as a desire to reduce coordination between so-called "independent" expenditure committees and candidates.[4]  While referencing donors to political action committees, neither Governor Cuomo nor his counsel discussed donor disclosures for tax-exempt entities that do not engage in electioneering such as the Plaintiffs here.

Less than 10 days later, on the penultimate day of the legislative session, the Governor's office released a statement highlighting a so-called "5 Points Ethics Reform Plan" reached with three legislative leaders, including the eventual sponsors of the bills at issue in this litigation, Assembly Speaker Carl Heastie and Senate Majority Leader John Flanagan.  *See*

---

legislative history, and any other documents from the Governor's office concerning the rationale for the statute.

[3]  *See* Governor Cuomo Advances Nation's Strongest Protections to Combat Citizens United (June 8, 2016), http://www.governor.ny.gov/news/governor-cuomo-advances-nations-strongest-protections-combat-citizens-united; Alphonso B. David, Addressing Dark Money in Politics (June 8, 2016), https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/201606081128.pdf; Andrew M. Cuomo, Remarks as Prepared (June 8, 2016), http://www.governor.ny.gov/news/remarks-prepared-governor-cuomo-advances-nations-strongest-protections-combat-citizens-united.

[4]  For example, the press release stated that the purpose of the Governor's legislation was to "curb the power of independent expenditure campaigns unleashed by the 2010 Supreme Court case *Citizens United vs. Federal Election Commission*."  Gov. Cuomo Advances Nation's Strongest Protections to Combat Citizens United (June 8, 2016).  The legislation, the Governor said, would "limit the 'quid pro quo' danger posed by colossal corporate donations and ensure that independent expenditure groups remain autonomous from the entities they support."  *Id.*; *see also* Dkt. 1, ¶32.  However, Sections 172-e and 172-f do not target *quid pro quo* corruption and coordination in elections.  Instead, they regulate and ensnare organizations and good government groups such as Citizens Union that are simply engaging in substantial speech on matters of public concern.

GIBSON DUNN

December 30, 2016
Page 3


Governor Cuomo and Legislative Leaders Announce Agreement on 5 Point Ethics Reform Plan (June 17, 2016), https://www.governor.ny.gov/news/governor-cuomo-and-legislative-leaders-announce-agreement-5-point-ethics-reform-plan.  The fifth point of this plan, titled "Issue Advocacy Reforms," was the first mention of disclosure requirements for 501(c)(4) organizations, but the release characterized them as applicable to "activities to influence electoral politics using 'issue advocacy.'"  *Id.*  Donor disclosure requirements for 501(c)(3) organizations were not mentioned.  That same day, the Governor's bills were introduced in the legislature and passed in less than eight hours.

On August 22, 2016, Citizens Union and four other civic groups wrote a letter to Governor Cuomo to identify "substantive and technical flaws" in the legislation.  *See* Letter to Governor Cuomo dated August 22, 2016; *see also* Dkt. 1, ¶ 34.  The letter challenged the "secretive process" that produced the flawed legislation and noted that the passage of the bill involved "no hearings, no robust legislative debate, and no meaningful public conversation on the topic of impact on non-profit charities."  Letter to Governor Cuomo dated August 22, 2016.  The letter warned of the significant harm to the public interest and "strongly urge[d] [the Governor] to veto" the bill.  *Id.*  But Governor Cuomo forged ahead anyway, signing the bill into law on August 24, 2016.  *See* Dkt. 1, ¶ 31.

**Statutes and Litigation in Other Jurisdictions**

Your Honor also ordered us to provide "a list of citations to all jurisdictions which have enacted the same or substantially similar legislation and any related litigation which ensued (and the outcome)."  Dkt. 14, at 2.  Plaintiffs have found no other jurisdiction in the United States with the same or substantially similar legislation.  For the Court's benefit, however, we have identified—and discuss below—what we believe to be the closest analogs, though differing in both kind and degree from Sections 172-e and 172-f.

As detailed in Plaintiffs' Complaint, Sections 172-e and 172-f, while ostensibly characterized as campaign finance reforms, are unlike other states' disclosure provisions because they are not linked with electioneering conduct.  For example, Maryland requires certain donor disclosures from 501(c)(4) organizations that make disbursements for the "express purpose" of funding electioneering communications or independent expenditures by third parties on express advocacy for or against a candidate or ballot issue.  Md. Code, Elec. Law § 13-309.2.  Similarly, California requires tax-exempt organizations that are not political committees to disclose certain donors over $1,000 when the organization engages in election-related solicitation or expenditures.  *See* Cal. Gov. Code § 84222.  Montana, meanwhile, requires disclosure of contributors to candidates or political committees "of $35 or more," Mont. Code Ann. § 13-37-229, or for incidental committees "aggregate contributions during the reporting period for a specified candidate, ballot issue, or petition

**GIBSON DUNN**

December 30, 2016
Page 4

for nomination of $35 or more," Mont. Code Ann. § 13-37-232 (emphasis added).[5] These Montana laws were recently upheld under exacting scrutiny and vagueness analyses because of, *inter alia*, their relationship to express electoral advocacy. *See Montanans for Cmty. Dev. v. Motl*, No. Cv 14-55-H-DLC, 2016 WL 6469886 (D. Mont. Oct. 31), *appeal filed*, No. 16-35997 (9th Cir. Dec. 1, 2016). In all of these states, the donor disclosures are tied to conduct intended to influence specific elections—a nexus wholly lacking from the disclosure requirements at issue here, which are triggered by any kind of political speech, even if unrelated to electioneering.

Other non-campaign finance donor disclosure regulations also differ substantially. For example, five states require, as a component of periodic reporting by charitable organizations, that a charitable organization submit copies of the Schedule B to Form 990 that it files with the IRS. *See* Cal. Gov. Code § 12585; Cal. Code Regs. tit. 11, § 301; Conn. Agencies Regs. § 21-a-190k-2; Miss. Code Ann. § 79-11-507; N.Y. Exec. Law § 172-b; 13 N.Y.C.R.R. § 91.5; Or. Admin. R. 137-010-0020. For tax-exempt organizations required to file it, Schedule B discloses annually to the IRS the names, addresses, and total contributions of any donors who contribute more than $5,000 in cash or property to the organization within a year, or for some organizations, more than 2% of total contributions. *See* 26 C.F.R. § 1.6033-2. But these states do not make this information available to the public. The distinction between these state requirements and the onerous disclosure provisions at issue here is clear: The former require the annual, nonpublic submission of already-prepared forms to a state official; the latter require new and public disclosures of more donors (using thresholds of $2,500 or $1,000 instead of $5,000) every six months—and are not components of general oversight, but are rather triggered by acts of speech. Meanwhile, at least 36 states do not require charitable organizations to report donor information to state officials at all.

Litigation over California and New York's periodic reporting requirements for charitable organizations—which, as noted, in any case differ materially from Sections 172-e and 172-f—has not clearly resolved their constitutional status: While the Southern District and the Ninth Circuit have denied preliminary injunctions in facial challenges to the regulations, *see Citizens United v. Schneiderman*, 115 F. Supp. 3d 457 (S.D.N.Y.), *appeal voluntarily dismissed*, No. 15-2718 (2d Cir. 2015); *Amns. for Prosperity Found. v. Harris*, 809 F.3d 536 (9th Cir. 2015); *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307 (9th Cir. 2015), the Central District of California has twice concluded after a bench trial that the disclosure

---

[5] "Incidental committees" under Montana law are those who are "not specifically organized or operating for the primary purpose of supporting or opposing candidates or ballot issues but that may incidentally become a political committee by receiving a contribution or making an expenditure," both of which are tied to specific candidates or ballot issues. Mont. Code Ann. § 13-1-101.

**GIBSON DUNN**

December 30, 2016
Page 5

requirements fail exacting scrutiny and entered permanent injunctions, *see Thomas More Law Ctr. v. Harris*, No. Cv. 15-3048-R, 2016 WL 6781090 (C.D. Cal. Nov. 16), *appeal filed*, No. 16-56855 (9th Cir. Dec. 16, 2016); *Amns. for Prosperity Found. v. Harris*, 182 F. Supp. 3d 1049 (C.D. Cal.), *appeal filed*, No. 16-55786 (9th Cir. June 1, 2016).  And while one of the Ninth Circuit's decisions reversed a preliminary injunction against disclosure to the California Attorney General, the court left in place a preliminary injunction against <u>public</u> disclosure of Schedule B forms.  *See Amns. for Prosperity Found.*, 809 F.3d at 542–43.

In sum, we have not found any other jurisdiction that requires public dissemination of donor disclosures outside of the election context.

<u>**Remedies**</u>

Pursuant to the Court's December 29 order, we will present more fully at the January 4 status conference the remedies available and sought in this case.  *See* Dkt. 20, at 1. Citizens Union's Complaint seeks declaratory and injunctive relief against enforcement or implementation of Sections 172-e and 172-f—particularly their reporting and publication requirements—because of their unconstitutional overbreadth.  Accordingly, Citizens Union respectfully requests that the Court declare these sections to be unconstitutional and unenforceable in their entirety.

It bears mention that the session law enacting these sections contains a severability clause providing that, "[i]f any clause, sentence, paragraph, subdivision, section or part of this act shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder thereof."  Dkt. 1-1, at 33.  Accordingly, a decision striking Sections 172-e and 172-f will not have any effect on the remainder of this legislation.

Finally, we note that, while limiting constructions of "ambiguous statutory language" may avoid invalidation of a statute, courts may impose such constructions "only if [the statute] is readily susceptible" to them; a court may not "rewrite a . . . law to conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain and sharply diminish [the legislature's] incentive to draft a narrowly tailored law in the first place."  *United States v. Stevens*, 559 U.S. 460, 481 (2010) (alteration in original) (citations and internal quotation marks omitted).

<u>**Proposed Schedule**</u>

At the initial pre-trial conference, we intend to propose the following schedule: an expedited discovery period, including document production followed by up to three depositions, ending

**GIBSON DUNN**

December 30, 2016
Page 6

on March 15, 2016;[6] the simultaneous filing of Plaintiffs' motion for a preliminary injunction and the parties' cross-motions for summary judgment by April 3, 2016; oppositions filed by May 1, 2016; replies filed by May 15, 2016; and hearings thereafter in June 2016, as the Court deems necessary, either for oral argument, evidentiary hearing, or both. With this schedule, we are hopeful the Court will be able to resolve this entire case expeditiously and at one time, deciding whether to grant preliminary and/or permanent injunctive relief or otherwise summarily disposing of the case, and holding an evidentiary hearing that could also serve as the trial on the merits, if necessary. As always, we appreciate the Court's consideration and look forward to appearing before Your Honor next week.

Respectfully,

*/s/ Randy M. Mastro*

Randy M. Mastro

cc: All Counsel of Record

---

[6] The parties have discussed conducting limited discovery in advance of combined preliminary injunction/summary judgment briefing and argument. Although defendants may take issue with Plaintiffs' discovery requests, such discovery in aid of a motion for a preliminary injunction is commonplace and appropriate, as Your Honor has repeatedly recognized. *See, e.g., North Face Apparel Corp. v. TC Fashions, Inc.,* No. 05 Civ. 9083(RMB), 2006 WL 838993 (S.D.N.Y. Mar. 30, 2006); *Gold Fields Ltd. v. Harmony Gold Mining Co.*, No. 04 Civ. 8767(RMB), 2004 WL 2710030 (S.D.N.Y. Nov. 23, 2004); *see also, e.g.*, *Ayyash v. Bank al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) (Lynch, J.) (assessing application for expedited discovery under "the flexible standard of reasonableness and good cause"). As previously explained, among the topics on which Plaintiffs are entitled to discovery are the existence and scope of the government's interest in obtaining donor disclosures from covered organizations, as well as basic documents like the bill jacket, message of necessity, legislative history, and any other documents from the Governor's office concerning the rationale for the statute. *See Free Speech Coalition*, 677 F.3d at 538.