UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
CITIZENS UNION OF THE CITY OF NEW YORK et al.,
Plaintiffs,

No. 16-cv-9592 (RMB) (KHP)

-against-
THE ATTORNEY GENERAL OF THE STATE OF NEW YORK et al.,
Defendants.
---------------------------------------------------------x

**INTERVENOR NEW YORK STATE SENATE REPLY IN SUPPORT OF THE GOVERNOR'S MOTION FOR A PROTECTIVE ORDER**

DAVID L. LEWIS, ESQ.
LEWIS & FIORE, ESQS.
Counsel to the New York State
Senate and to the Temporary President
225 Broadway, Suite 3300
New York, New York 10007
(212) 285-2290
dlewis@lewisandfiore.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT .............................................................................................................. 3

I THE GOVERNOR HAS MET HIS BURDEN IN ORDER TO PREVENT DISCLOSURE OF PRIVILEGED MATERIALS .............................................................. 3

II THE CLAIM THAT THE LEGISLATIVE PRIVILEGE IS NOT ABSOLUTE REMAINS BASED UPON FAULTY REASONING DESPITE ITS REPETITION....... 5

III. EVEN IF PRIVILEGES WERE QUALIFIED THE CITIZENS UNION CONCEPTOF BALANCE IS ANYTHING BUT ........................................................................ 8

IV THE CLAIMS OF ATTORNEY CLIENT PRIVILEGE ARE SEPARATE FROM THE CLAIM OF COMMON INTEREST PRIVILEGE AND PROTECT MATERIALS………………………………………………………………………...10

CONCLUSION.......................................................................................................... 10

TABLE OF AUTHORITIES

**CASES**

*Almonte v. City of Long Beach*
478 F.3d 100, 107 (2d Cir. 2007) ....... 6

*Burtnick v. McLean*
76 F.3d 611, 613 (4th Cir. 1996) ....... 7

*Forrester v. White*
484 U.S. 219, 223–24 (1988) ....... 4

*Gonzales v. National Broadcasting Co., Inc.*
194 F.3d 29, 36 (2d Cir. 1999) ....... 5

*Gravel v. U.S. 408 U.S*
606,616 (1972) ....... 4

*Hollyday v. Rainey*
964 F.2d 1441, 1443 (4th Cir.1992) ....... 7

*Lemanik S.A. v. McKinley Allsopp, Inc.*
125 F.R.D. 602,608 (SDNY 1989) ....... 8

*Puente Arizona v, Arapaio*
314 F.R.D. 664, 670 (D Ariz. May 2016) ....... 6

*Rodriguez v. Pataki I*
280 F Supp. 2d 89 aff'd 293 F. Supp. 2d 302. (S.D.N.Y. 2003) ....... 6

*Rodriquez and Favors v. Cuomo*
285 F.R.D. 187 (E.D.N.Y. 2012) ....... 6

*State Employees Bargaining Agent Coalition v. Rowland*
493 F.3d 71, 82 (2d Cir. 2007) ....... 7

*Supreme Court of Virginia v. Consumers Union of the United States*
446 U.S. 719, 732–33 (1980) ....... 4, 7

*Tenney v. Brandhove*
341 U.S. 367, 372 (1951) ....... 4

*U.S. v. Gillock*
445 U.S. 360 (1980) ....... 6

*U.S. v. Rayburn House Office Bldg. Room 2113 Wash., D.C. 20515*
497 F.3d 654,659-60 (D.C. Cir. 2007) ........................................................................ 4

*United States v. Stevens*
559 U.S. 460, 473 (2010) ........................................................................................ 5

*United States v. Swindall*
971 F.2d 1531, 1545 (11th Cir.1992 ) ..................................................................... 9

*Warden v. Pataki*
35 F Supp. 2d 354, 358 (S.D.N.Y. 1999),
aff'd sub nom. Chan v Pataki, 201 F.3d 430 [2d Cir 1999] ..................................... 4

*Williamson v. Lee Optical of Oklahoma, Inc.*
348 U.S. 483, 488–489 (1955) ................................................................................ 8

**CONSTITUTIONAL PROVISIONS**

N Y Const. Article III section 14 ............................................................................ 2

**STATUTES AND RULES**

Fed. R. Civ. P. 26(b)(1)........................................................................................... 5

New York Legislative Law 1 c (a)............................................................................ 1

**OTHER AUTHORITIES**

http://www.nypap.org/preservation-history/citizens-union/ ......................................... 1

http://www.citizensunion.org/testimony_to_the_nys_senate_temporary_committee_on_rules_and_administration_reform ........................................................................................................ 2

https://www.scribd.com/document/130048969/Messages-of-Necessity-2002-to-2013................. 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
CITIZENS UNION OF THE CITY OF NEW YORK et al.,
Plaintiffs,

-against-

THE ATTORNEY GENERAL OF THE STATE OF NEW YORK et al.,
Defendants.
--------------------------------------------------------x

No. 16-cv-9592 (RMB) (KHP)

**INTERVENOR NEW YORK STATE SENATE REPLY IN SUPPORT OF THE GOVERNOR'S MOTION FOR A PROTECTIVE ORDER**

**Preliminary Statement**

The New York State Senate ("Senate") herewith files its reply in support of the Governor's motion for a protective order. Plaintiffs' opposition papers misstate the law, fail to come to grips with the nature of privilege and represent a reversal of the burden attendant to a party seeking to breach vital privileges of government in order to fish for anything that can support their singular view of the process of enactment of laws.

The legislature and the Governor under powers granted by the State Constitution determined that certain entities, part of the political and lobbying process, should make further disclosures than was in the existing law. Citizens Union, a self-described "good government group" funded by unknown parties, making them opaque players in the political process while they lobby the legislature on various pieces of legislation and endorse candidates for public office objects.[1] By law, they are lobbyists. See New York Legislative Law 1 c (a). Plaintiffs rebelled at the idea that they were to be treated as every other political player in the process of lobbying the legislature and the Executive.

1 Citizens Union. See http://www.nypap.org/preservation-history/citizens-union/

Plaintiffs and others lobbied the Governor to veto the bill. They failed. They then commenced the instant lawsuit. Judge Berman granted "limited discovery" on the basis that plaintiffs could not understand why this piece of legislation was passed.[2] Subsequently, plaintiffs obtained the public documents of the Legislature, which included additional documents. Presented with the entirety of the public record from the Executive and the Legislature, and ignoring the presumption of regularity of legislative enactments, plaintiffs seek internal privileged documents.

Plaintiffs accused the Governor and by extension the entire Legislature of perfidy, allegedly directed at them for their criticizing the Governor. Plaintiffs' theory is, to be charitable, untenable. The claim is specious given that the actions complained of requires a vote of the majorities of each house of the legislature (even though a few members decried their own failure to read the bill). Typical of plaintiffs' singular perception is its claims as to the use of the Message of Necessity. Plaintiffs see this as nefarious because plaintiffs see no necessity in the Message.[3] It ignores the reality of the calendar. It neglects to know or admit that the Message was due because before the three day aging period had concluded the Senate was to adjourn. . Plaintiffs insist without authority that the necessity must relate to the purpose of the legislation. N Y Const. Article III section 14, the Message of Necessity provision of the State Constitution imposes no such requirement. Because the bill cannot be entertained before the State Constitutional three day period and the bill would be lost if not passed prior to adjournment. The

---

[3] Citizens Union has lobbied against the use of the Message of Necessity. One example is sufficient.http://www.citizensunion.org/testimony_to_the_nys_senate_temporary_committee_on_rules_and_administration_reform

practice occurs with many, many bills sought to be passed by the Executive at the end of session, See https://www.scribd.com/document/130048969/Messages-of-Necessity-2002-to-2013

Plaintiffs' conspiratorial theory about the message demonstrate why their view of the process that underlies their claim for the need for discovery cannot be relied upon.

A first principles of constitutional adjudication—the basic presumption of the constitutional validity of a duly enacted state or federal law-- is at stake herein. The State cannot function as an independent entity for the benefit of all the people of the State of New York if the fantasy of a single group allows for the wholesale rummaging in the papers and documents of the government on a claim that "The Governor does not like us". Plaintiffs' First Amendment claim cannot be used as an excuse to rummage through the papers of the Governor and the Legislature. The facial claim is either valid or not. Plaintiffs' theory allows any federal litigant the right to have unfettered access to any document currently protected by legislative privilege by simply filing a federal complaint and a claim of incomprehension as to why they are to be regulated. This certainly turns the rules of comity and deference on their head. A federal court sanctioning invasion of the state legislative process demonstrates a startling lack of deference to the State and its officers.

## ARGUMENT

### POINT I

### THE GOVERNOR HAS MET HIS BURDEN IN ORDER TO PREVENT DISCLOSURE OF PRIVILEGED MATERIALS

Plaintiffs turn the issue of privilege on its head in derogation of the law. The doctrine of common law legislative immunity has been developed in federal courts to protect state legislators, and other state officials engaged in legislative acts, and arises out of the same

"taproots" of legislative independence that gave rise to the federal Speech or Debate Clause. *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951); see *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 732–33 (1980). Legislative immunity provides state legislators with a testimonial privilege for all legitimate legislative activities. A functional approach is used to determine whether a state official is engaged in legislative action and entitled to the privilege. See *Forrester v. White*, 484 U.S. 219, 223–24 (1988). The legislative privilege protects a legislator's communications that "bear on potential legislation" – communications undertaken "in connection with or in aid of legislative acts." The privilege applies only if the communication pertains to legislation, as opposed to executive or administrative action. The Senate has a privilege against disclosure as to the production of written legislative materials. See *U.S. v. Rayburn House Office Bldg. Room 2113 Wash., D.C. 20515*, 497 F.3d 654,659-60 (D.C. Cir. 2007). See *Gravel v. U.S.* 408 U.S. 606,616 (1972). While Speech and Debate clause refers to "members," the Assembly and the Senate can act only through their members. Accordingly, the Senate by and through its members and employees are immune, under the Speech or Debate Clause, to the same extent as a named member in the action. *Warden v. Pataki*, 35 F Supp. 2d 354, 358 (S.D.N.Y. 1999], aff'd sub nom. *Chan v Pataki*, 201 F.3d 430 [2d Cir 1999] ["bars actions against legislators . . . and, a fortiori, legislatures"). Passage of legislation is a core legislative action formally and traditionally, and impacts on the public at large.

Plaintiffs further argue that there is no privilege issue because there is no single Senator as a party and that the institution is not a privilege holder. The Senate documents are under the control of the Senate Majority Leader by the Senate's rules. Certain documents sought are

generated on behalf of the Majority Leader by and for his conference of individual members. That they act collectively does not negate a claim of privilege.

Contrary to plaintiffs' creative dicta, in this Circuit upon the assertion of privilege, the burden shifts to the party who wishes to pierce the invoked privilege. That party must show that the materials at issue are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources. *Gonzales v. National Broadcasting Co., Inc.*194 F.3d 29, 36 (2d Cir. 1999) "The material sought must also be proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Plaintiffs fail in both respects. The case is a facial challenge to the law on the basis that it violates their First Amendment right to not be regulated. A facial challenge requires no external information. The decision is to be made "on the basis of factually barebones records" *United States v. Stevens*, 559 U.S. 460, 473 (2010). Plaintiffs possess all the reasons for the enactment of law that appears in the public record. Any further rummaging is not proportional to the needs of the case. It is designed to obtain the thought processes and determinations of the Executive and the Legislature. The claim is that plaintiffs said bad things about the Governor, and he is punishing us. It sets no limit on what can be claimed to be probed and what for. It remains a haystack looking for a nonexistent needle.

The privilege asserted is not a shield for the truth but rather a means of preventing harm to government entities engaged enacting legislation for the greater public good and opposed by a select group that wishes not to be regulated.

## POINT II

## THE CLAIM THAT THE LEGISLATIVE PRIVILEGE IS NOT ABSOLUTE REMAINS BASED UPON FAULTY REASONING DESPITE ITS REPETITION

Plaintiffs wholly ignored the Senate's argument that the legislative privilege is absolute. It failed to discuss the issue of whether the original rulings were in error in a non-criminal

context. Fundamentally, plaintiffs merely cited every case it could find which repeated the erroneous conclusion citing the same case or where there is an absence of a state legislative question or do not relate to state legislature action in non-voting rights cases and are thus not congruent with the issue before this Court.

The absolute nature of the privilege is maintained when the issue is not a criminal grand jury investigation or a Voting Rights matter. See e.g. *U.S. v. Gillock* 445 U.S. 360 (1980) ("important federal interests are at stake, as in the enforcement of federal criminal statutes…impair[ment of] the legitimate interest of the Federal Government in enforcing its criminal statutes with only speculative benefit to the state legislative process.") Plaintiffs also misconstrue the body of case law that related exclusively to reappointment cases in this Circuit, a line of cases that begins with *Rodriguez v. Pataki I*, 280 F Supp. 2d 89 aff'd 293 F. Supp. 2d 302. (S.D.N.Y. 2003) abrogated by *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007). In *Almonte* ,supra, ,state legislative immunity protected legislator's conversations with "executive officers, partisans, political interest groups, or constituents...to discuss issues that bear on potential legislation" See also *Puente Arizona v, Arapaio*, 314 F.R.D. 664, 670 (D Ariz. May 2016). The uniqueness of the role of racial motivation in the drawing of districts that occupied the Court in *Rodriquez* and *Favors v. Cuomo*, 285 F.R.D. 187 (E.D.N.Y. 2012) is not present in this case.[4] Reapportionment cases are treated differently because the drawing of districts are subject to challenge specifically on the issue of motivation, The key element in reapportionment cases that sets it apart from claims of ordinary litigants seeking vindication of their own claimed rights us the unique important federal interest in enforcing the Voting Rights Act, 42 U.S.C. §

4 The magistrate judge's opinion in *Favors* was on appeal to the three judge panel at the time the panel granted defendants Senate Majority and Assembly Majorities motion for summary judgment

1973. The Complaint of a private litigant, albeit alleging First Amendment issues, a resistance to regulation, fails to rise to the level of the federal interest of voting rights.

The Grand Jury subpoena is in service of policing corruption by state officials and the Voting Rights Act litigation is where the federal government have unique interests in policing the states ad state actors, are in high contrast to the instant action. By conflating these areas of unique federal government responsibilities, plaintiffs seek to elevate their grievance into the equivalent of protection of the public from corruption and dilution of the right to vote. An individual litigant's assertion of a First Amendment right not to be regulated is not of the same dimension. . As in *Tenney*, supra, absolute state legislative immunity and privilege should be preserved under such circumstances. See *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996); accord *Hollyday v. Rainey*, 964 F.2d 1441, 1443 (4th Cir.1992).

*Consumers Union of United States, Inc.*, 446 U.S. at 733-734 holds that the privilege is extended to insure that the legislative function can be performed independently without fear of outside interference caused by the combing through each remark for discovery purposes. The purpose of the privilege is to effectuate open and frank discussions among decision makers in government. Such discussion are embodied in drafts of legislative language and similar documents as demanded. See also *State Employees Bargaining Agent Coalition v. Rowland*, 493 F.3d 71, 82 (2d Cir. 2007) The failure to accord the Governor an absolute privilege as against every litigant with a constitutional claim will eviscerate the values of the privilege, and place the State actors at the mercy of anyone who can type a complaint with the appropriate words and a grievance.

**POINT III**

**EVEN IF PRIVILEGES WERE QUALIFIED THE CITIZENS UNION CONCEPT OF BALANCE IS ANYTHING BUT**

Plaintiffs' view of balancing in the instant matter is dramatically unbalanced. Whether privileged material must be disclosed is determined by balancing the legislator's interest in non-disclosure with the movant's interest in obtaining the material. The factors balanced to determine whether the privilege should apply in a given case, cumulatively weigh in favor of the privilege:

> (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the "seriousness" of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *Rodriguez*, 280 F.Supp.2d at 101

Applying these factors cumulatively, the Court should conclude that the privilege applies. The fact finding process of legislative bodies is generally entitled to a presumption of regularity and deferential review by the judiciary. See *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 488–489 (1955). A request does not bootstrap itself into relevance when a litigant insists that it cannot fathom the reason a legislature would pass and the Governor sign a bill. The items sought have no relevance to plaintiffs' facial challenge to the enacted law. Dissatisfied with the full public record, plaintiffs want access to the internal privileged processes and categorically deem them relevant. Parties should not be permitted to roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so. *Lemanik S.A. v. McKinley Allsopp, Inc*. 125 F.R.D. 602,608 (SDNY 1989).

There is an availability of other evidence from other sources. Plaintiffs are longtime political players and lobbyists on the Albany scene, and know how and where to obtain non privileged information, including media accounts, friendly sources and the like.. See footnote 1.

While a First Amendment rights claim is serious, the allegation in a complaint untested cannot create an exception that swallows up the rule. The issue is really whether as a preliminary matter the strength of the claim validates the breach of the privilege. Plaintiffs' claim that there should be no regulation of themselves as political actors fails to be strong enough to justify disabling the privilege

The role of the government in the litigation should weigh in favor of protection of the privilege. The State's involvement should lead to the conclusion that the privilege should be honored. The State, a defendant in this case seeks to uphold the validity of the challenged legislation. It has been forced into court to protect its process of law making. The privilege should not be breached because the purpose of the privilege is to protect the acts of legislators and the Governor in the making of laws from intrusion by dissatisfied litigant and to protect legislators from unwarranted interference with core legislative activity.

Finally, plaintiffs belittle the chilling effect this intrusion will have on law making within the government and even from the outside. Courts have recognized that dissemination of information concerning a legislator's involvement with particular pieces of legislation could potentially chill the legislator's activities. See *United States v. Swindall*, 971 F.2d 1531, 1545 (11th Cir.1992 ) ("indirect impairment". The disclosure of the thoughts and thought processes of anyone involved in the making of legislation will chill not only lawmakers and staff's desires to commit their thoughts to paper, it will have the effect of assuring that persons will be unwilling to participate in the formulation of legislation so as to avoid being subject to future rummaging by litigants unhappy with the public record.

## POINT IV

## THE CLAIMS OF ATTORNEY CLIENT PRIVILEGE ARE SEPARATE FROM THE CLAIM OF COMMON INTEREST PRIVILEGE AND PROTECT MATERIALS

Plaintiffs inexplicably conflate a purported waiver of the attorney client privilege and the common interest privilege. They claim that there can be no common interest privilege among the legislative parties because they could have a falling out and then what happens. Dumbfounded, they have followed their own logic to a dead end of their own making. In reality the problem bears no uniqueness and is resolved in favor of the sanctity of the privilege. In civil cases, parties with common interest privilege sometimes settle while others continue to litigate. In criminal cases, a defendant in a common interest privilege situation breaks from the common and pleads guilty. The agreed upon common interest between and among counsel is a privilege that bars the use of the information obtained against the other privilege holders within the privilege agreement and as against the outside world as well.  . Where counsel work together to an agreed upon common end, a privilege exists as against all interlopers. Plaintiffs seek to trespass on the privilege and should be barred from doing so.

## CONCLUSION

A Protective Order barring disclosure should issue.

DATED: New York, New York
March 17, 2017

/s/ DAVID L. LEWIS

DAVID L. LEWIS, ESQ.
LEWIS & FIORE, ESQS.
Counsel to the New York State
Senate and to the Temporary President
225 Broadway, Suite 3300
New York, New York 10007
(212) 285-2290
dlewis@lewisandfiore.com