UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITIZENS UNION OF THE CITY OF NEW YORK, et al.,

     Plaintiffs,

   v.

THE ATTORNEY GENERAL OF THE STATE OF NEW YORK, et al.,

     Defendants.

16-cv-9592 (RMB) (KHP)

---

**MEMORANDUM OF LAW IN SUPPORT OF GOVERNOR ANDREW CUOMO'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

        CAHILL GORDON & REINDEL LLP
         Floyd Abrams
         Susan Buckley
         Tammy Roy
        80 Pine Street
        New York, New York 10005
        (212) 701-3000

       *Attorneys for Governor Andrew Cuomo*

-i-

# TABLE OF CONTENTS

**Page(s)**

BACKGROUND ................................................................................................................ 1

    The Statutes at Issue ................................................................................................ 1

    This Litigation.......................................................................................................... 4

    The Instant Motion................................................................................................... 5

ARGUMENT ..................................................................................................................... 6

    I.     ALL CLAIMS AGAINST THE GOVERNOR ARE BARRED BY THE
          ELEVENTH AMENDMENT...................................................................... 6

    II.    ALL CLAIMS AGAINST THE GOVERNOR ARE ALSO BARRED BY THE
          DOCTRINE OF LEGISLATIVE IMMUNITY ......................................... 9

CONCLUSION................................................................................................................ 11

## TABLE OF AUTHORITIES

                                                                                                                        **Page(s)**

**Cases**

*Alliance of American Insurers* v. *Cuomo*,
   854 F.2d 591 (2d Cir. 1988) ............................................................................................... 4n

*Aron* v. *Becker*,
   48 F. Supp. 3d 347 (N.D.N.Y. 2014) .................................................................................... 8

*Association des Eleveurs de Canards et d'Oies du Quebec* v. *Harris*,
   729 F.3d 937 (9th Cir. 2013) ................................................................................................. 7

*Bogan* v. *Scott-Harris*,
   523 U.S. 44 (1998) .............................................................................................................. 10

*Brooks* v. *Spitzer*,
   No. 9:13-CV-1483 (GLS/ATB), 2014 WL 8276494, at *11 (N.D.N.Y. Dec. 3, 2014)
   *report and recommendation adopted in part, rejected in part on other grounds*,
   *Brooks* v. *Spitzer*, No. 9:13-CV-1483 (GLS/ATB), 2015 WL 1313243
   (N.D.N.Y. Mar. 24, 2015) .................................................................................................... 10

*Buckley* v. *Valeo*,
   424 U.S. 1 (1976) .................................................................................................................. 1

*Citizens United* v. *Federal Election Commission*,
   558 U.S. 310 (2010) ......................................................................................................... 1, 3

*Delaware Strong Families* v. *Attorney General*,
   793 F.3d 304 (3d Cir. 2015) .................................................................................................. 3

*Doe* v. *Jindal*,
   No. 15-1283, 2015 WL 7300506 (E.D. La. Nov. 18, 2015) ................................................. 9

*Hans* v. *Louisiana*,
   134 U.S. 1 (1890) .................................................................................................................. 6

*Harhay* v. *Town of Ellington Board of Education*,
   323 F.3d 206 (2d Cir. 2003) ............................................................................................... 10

*Hodges* v. *Strauss*,
   No. 16CV2905-GPC(RBB), 2016 WL 7229677 (S.D. Cal. Dec. 14, 2016) ...................... 11

*Independence Institute* v. *Federal Election Commission*,
   No. 14-cv-1500, 2016 WL 6560396 (D.D.C. Nov. 3, 2016),
   *aff'd*, 137 S. Ct. 1204 (2017) ........................................................................................... 2-3

*Kelly* v. *New York State Civil Service Commission*,
   632 F. App'x 17 (2d Cir. 2016) ..............................................................................4n, 8

*Maybee* v. *New York*,
   4 N.Y. 3d 415 (2005) ...............................................................................................4n

*McConnell* v. *Federal Election Commission*,
   540 U.S. 93 (2003)......................................................................................................2

*Mikolinski* v. *Connecticut*,
   225 F.3d 646 (Table), 2000 WL 1121393 (2d Cir. 2000).........................................7

*Morris* v. *Livingston*,
   739 F.3d 740 (5th Cir. 2014) .....................................................................................7

*New York State Motor Truck Association* v. *Pataki*,
   No. 03CV2386, 2004 WL 2937803 (S.D.N.Y. 2004) .............................................11

*Nichols* v. *Brown*,
   859 F. Supp. 2d 1118 (C.D. Cal. 2012) .....................................................................9

*Nunez* v. *Cuomo*,
   No. 11-CV-3457(DLI)(LB), 2012 WL 3241260 (E.D.N.Y. Aug. 7, 2012) ..............8

*Piedvache* v. *Ige*,
   No. 16-00138 DKW-RLP, 2016 WL 6516826, (D. Haw. Nov. 2, 2016)..................7

*Pilot* v. *Snyder*,
   No. 15-13191, 2016 WL 6651847 (May 16, 2016), *report and recommendation adopted*,
   No. 15-13191, 2016 WL 3548218 (E.D. Mich. June 30, 2016) ................................7

*Scott* v. *Taylor*,
   405 F.3d 1251 (11th Cir. 2005) .................................................................................8

*State Employees Bargaining Agent Coalition* v. *Rowland*,
   494 F.3d 71 (2d Cir. 2007).................................................................................8, 10

*Steinberg* v. *Elkman*,
   666 F. App'x 26 (2d Cir. 2016) .................................................................................8

*Steinberg* v. *Elkman*,
   No. 15CV278-LTS-DCF, 2016 WL 796870 (S.D.N.Y. Feb. 22, 2016), *reconsideration denied*, No. 15CV278-LTS-DCF, 2016 WL 1604764 (S.D.N.Y. Apr. 6, 2016),
   *aff'd*, 666 F. App'x 26 (2d Cir. 2016).........................................................................7

*Supreme Court of Virginia* v. *Consumers Union of United States, Inc.*,
   446 U.S. 719 (1980).................................................................................................11

*Ulrich* v. *Corbett*,
    614 F. App'x 572 (3d Cir. 2015) ..................................................................................7

*Vermont Right to Life Committee, Inc.* v. *Sorrell*,
    758 F.3d 118 (2d Cir. 2014)........................................................................................3

*Wang* v. *Pataki*,
    164 F. Supp. 2d 406 (S.D.N.Y. 2001)..........................................................................9

*Warden* v. *Pataki*,
    35 F. Supp. 2d 354 (S.D.N.Y.), *aff'd sub nom.*
    *Chan* v. *Pataki*, 201 F.3d 430 (2d Cir. 1999) ...........................................................11

*Women's Emergency Network* v. *Bush*,
    323 F.3d 937 (11th Cir. 2003) ...................................................................................11

*Ex parte Young*,
    209 U.S. 123 (1908)....................................................................................................8

**Constitutional Provisions**

N.Y. Const. art. III, § 11 .......................................................................................................9

U.S. Const. amend. XI .........................................................................................................6

U.S. Const. art. I, § 6............................................................................................................9

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................................................1

Federal Rule of Civil Procedure 12(b)(6) ............................................................................1

Federal Rule of Civil Procedure 45 .....................................................................................6

**Statutes**

New York Executive Law
    Sections 172-e...................................................................................................................1
    Sections 172-f ...................................................................................................................1

**Other Authorities**

Bill de Blasio and the Coalition for Accountability in Political Spending (CAPS),
    *Report: From Social Welfare to Political Warfare* (Mar. 2013), *available at*
    http://politicalspending.org/501c4-Report.pdf........................................................2n

Letter from Senator Sheldon Whitehouse *et al.*, *Comments on Guidance for Tax-Exempt Social Welfare Organizations on Candidate-Related Political Activities* (Feb. 27, 2014), *available at* https://www.whitehouse.senate.gov/imo/media/doc/2014-02-27%20501c4%20Rules%20Comments%20Signed%20FINAL.pdf .......................................2n

Defendant Andrew Cuomo, Governor of the State of New York ("the Governor"), respectfully submits this memorandum of law in support of his motion to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## BACKGROUND

*The Statutes at Issue*

In June 2016, the New York State Senate and Assembly both voted, nearly unanimously, to adopt New York Executive Law Sections 172-e and 172-f (the "Nonprofit Disclosure Provisions"), which expanded disclosure requirements for 501(c)(3) and 501(c)(4) corporations that expend significant amounts of money on lobbying or other political speech. The Nonprofit Disclosure Provisions are part of a larger ethics reform package intended to address the impact of the Supreme Court's 2010 decision in *Citizens United* v. *Federal Election Commission*, 558 U.S. 310 (2010). Relevant here, *Citizens United* held that, while corporations were protected under the First Amendment in their spending on political advertising, it was constitutional for Congress to require the disclosure of identities of individuals and corporations who funded the speech, since "transparency enables the electorate to make informed decisions and give proper weight to different speakers and messages." *Id*. at 371. Eight members of the Supreme Court agreed on the point. Justice Thomas was the lone dissenter. *Id*. at 480. In this regard, the Supreme Court's decision in *Citizens United* was entirely consistent with its prior rulings in *Buckley* v. *Valeo*, 424 U.S. 1 (1976) (upholding the disclosure requirements of the Federal Election Campaign Act),

---

[1] By Order entered April 26, 2017, this Court granted the Governor leave to file a motion to dismiss the Amended Complaint "based upon executive immunity from suit under the Eleventh Amendment." In the event the Governor should remain a party to this case, he expressly reserves his right to move to dismiss the Amended Complaint on all other grounds that are available to him including, but not limited to, the grounds that this Court lacks subject matter jurisdiction over this action for other reasons and that the Complaint fails to state a claim upon which relief may be granted. By making this motion in accordance with the Court's Order, the Governor does not intend to waive, and specifically preserves, the right to present all arguments that he would otherwise have made by way of a motion to dismiss the Amended Complaint.

and *McConnell* v. *Federal Election Commission*, 540 U.S. 93 (2003) (upholding the disclosure requirements of the Bipartisan Campaign Reform Act), as well as the Supreme Court's most recent ruling on the subject in *Independence Institute* v. *Federal Election Commission*, No. 14-cv-1500, 2016 WL 6560396, at *6-8 (D.D.C. Nov. 3, 2016) (rejecting an as-applied challenge to BCRA's disclosure requirements in the context of an advertisement urging support for pending legislation), *aff'd*, 137 S. Ct. 1204 (2017).

After the Supreme Court's decision in *Citizens United*, the funding of speech through the vehicle of 501(c)(4) corporations increased exponentially.  By way of example, in the two years following *Citizens United*, spending by 501(c)(4) corporations on campaign-related speech and issue advertising increased 1,579% over 2008 levels.[2]  This prompted legislators and commentators to call for additional disclosure of the sources of funding underlying campaign-related speech and issue advertising propagated by 501(c)(4) corporations.[3]

The Nonprofit Disclosure provisions were enacted to provide that disclosure in New York State.  *See* Assembly's Memorandum in Support of Assembly Bill No. 10742 ("Disclosure of political relationships and funding behaviors widely recognized to be influential, but which operate in the shadows, is essential to restoring the public's faith and trust in our political process.") (Amended Complaint ("AC") ¶ 49).  Significantly, New York's Nonprofit Disclosure Provisions do not limit the amount of money that may be spent on or donated for speech-related activities; nor do they punish speakers – whether individuals or corporations – in any manner for

---

[2] Bill de Blasio and the Coalition for Accountability in Political Spending (CAPS), *Report: From Social Welfare to Political Warfare* (Mar. 2013), *available at* http://politicalspending.org/501c4-Report.pdf.

[3] *See, e.g.*, Letter from Senator Sheldon Whitehouse *et al.*, *Comments on Guidance for Tax-Exempt Social Welfare Organizations on Candidate-Related Political Activities* (Feb. 27, 2014), *available at* https://www.whitehouse.senate.gov/imo/media/doc/2014-02-27%20501c4%20Rules%20Comments%20Signed%20FINAL.pdf ("[F]ollowing *Citizens United*, that regime of 'effective disclosure' has completely broken down with regard to non-profit groups, in large part because of ambiguous and permissive Treasury rules regarding political spending by these groups.  Many of these groups formed as 501(c)(4)s because the current rules allow them to avoid disclosure.").

doing so. What they do is require the disclosure of the identities of large donors who contribute funding for candidate- and issue-related speech through contributions to 501(c)(4)s. Similar efforts – by Congress and other state legislatures – have consistently been upheld by the Supreme Court, the Second Circuit and other Courts of Appeal. *See*, *e.g*., *Citizens United* v. *Federal Election Commission*, 558 U.S. at 367 (upholding provisions of the Bipartisan Campaign Reform Act requiring disclosures by any person or entity that spends more than $10,000 on electioneering communications during any calendar year, including disclosure of the full name and address of any person who contributes more than $1,000 in that calendar year); *Delaware Strong Families* v. *Attorney General*, 793 F.3d 304, 308-10 (3d Cir. 2015) (upholding provisions of a Delaware statute requiring disclosures by any person or entity that spends more than $500 on electioneering communications in an election period, including the disclosure of the full name and address of any person who contributes more than $100 during the same period); *Vermont Right to Life Committee, Inc*. v. *Sorrell*, 758 F.3d 118, 135, 137-39 (2d Cir. 2014) (upholding provisions of a Vermont statute requiring disclosures by groups that accepted contributions of $1,000 or more and made expenditures of $1,000 or more in any two-year general election cycle for the purpose of supporting or opposing one or more candidates). This is so regardless of whether the speech that triggers the disclosure obligation expressly advocates the election or defeat of a candidate, urges a position on an issue or falls somewhere in between. *See Citizens United*, 558 U.S. at 369 (holding that disclosure requirements need not be limited to speech that is the functional equivalent of express advocacy); *Independence Institute* v. *Federal Election Commission*, No. 14-cv-1500, 2016 WL 6560396, at *6-8 (D.D.C. Nov. 3, 2016) (large-donor disclosure of money expended on issue advertising upheld as consistent with the First Amendment), *aff'd*, 137 S. Ct. 1204 (2017); *Vermont Right to Life Committee, Inc*. v. *Sorrell*,

758 F.3d at 132 (explaining that "*Citizens United* . . . expressly rejected the 'contention that the disclosure requirements must be limited to speech that is the functional equivalent of express advocacy'") (citation omitted).

*This Litigation*

Plaintiffs Citizens Union of the City of New York, a 501(c)(4) corporation, and Citizens Union Foundation, Inc. of the City of New York, a 501(c)(3) corporation (together, "Citizens Union"), challenge the newly-enacted disclosure requirements principally on the ground that they violate the First Amendment of the United States Constitution.[4] Specifically, Citizens Union alleges that Sections 172-e and 172-f are facially overbroad (*i.e.*, unconstitutional in all their applications) (AC ¶¶ 149-158), and unconstitutional as applied to Citizens Union (despite the fact that they've yet to be applied to Citizens Union) (AC ¶¶ 159-168). Citizens Union also asserts a claim that the statutes violate the New York State Constitution because the Senate and Assembly voted on the bill pursuant to an allegedly flawed Message of Necessity, a claim that has been foreclosed by the New York Court of Appeals[5] and a claim that is not cognizable in this Court in any event.[6] (AC ¶¶ 169-173).

The two defendants in the Citizens Union action are Governor Cuomo, "in his official capacity" and Attorney General Schneiderman, in his. (AC ¶¶ 14, 15).[7] As regards Governor

---

[4] Facts drawn from the Amended Complaint and taken as true for purposes of the present motion only.

[5] *Maybee* v. *New York*, 4 N.Y. 3d 415, 421 (2005) (rejecting a challenge based on an allegedly flawed Message of Necessity and holding that the Governor's decision to issue one is "unchallengeable").

[6] *Kelly* v. *New York State Civil Service Commission*, 632 F. App'x 17, 18 (2d Cir. 2016) (federal courts are precluded from adjudicating claims challenging a state official's conduct under state law) (citing *Pennhurst State School & Hospital* v. *Halderman*, 465 U.S. 89 (1984)); *Alliance of American Insurers* v. *Cuomo*, 854 F.2d 591, 604 (2d Cir. 1988) (same).

[7] Governor Cuomo is named as a defendant only in the Citizens Union action. He is not a named defendant in either of the other two actions consolidated before this Court. [Dkt Nos. 1:16-cv-09854-RMB-KHP and 1:17-cv-01655-RMB-KHP]. Present and former members of New York's Joint Commission on Public Ethics were also named as

Cuomo, Citizens Union does not allege that the Governor has any role in enforcing the Nonprofit Disclosure Provisions, but only that the Governor is "charged with the faithful execution of the laws of the State," as most governors are. (AC ¶ 14). Nor does Citizens United allege that the Governor has any authority to enforce the Nonprofit Disclosure Provisions against Citizens Union or any other entity. In fact he does not. As the Amended Complaint concedes, "the Attorney General is charged with the administration and enforcement of the Nonprofit Disclosure Provisions." (AC ¶ 15). Citizens Union does claim that the Governor "announc[ed]" (or advanced) the legislation in question, (AC ¶¶ 38-39); issued a "Message of Necessity" to the Assembly and Senate to facilitate expedited voting on the bill before the legislative session ended, (AC ¶¶ 42-43); and signed the bill into law on August 24, 2016 (AC ¶ 52).

Citizens Union seeks three types of relief: a declaratory judgment that sections 172-e and 172-f are "void and of no force or effect," a preliminary and permanent injunction enjoining any enforcement of either section, and attorneys' fees under 42 U.S.C. § 1988. (AC ¶¶ 153, 158, 163, 168).

*The Instant Motion*

On March 16, 2017 and April 19, 2017, the Governor presented Citizens Union and this Court with well-established authority squarely holding that all claims against Governor Cuomo here are barred by the Eleventh Amendment. *See* Mar. 16, 2017 Tr. 9:2-12 ("There is a significant body of Eleventh Amendment law, including from this district, which says in so many words that a federal court cannot entertain a case brought against a state, including a state governor, who acts within the realm of his official duties"); Letter from Floyd Abrams (Apr. 18, 2017) [Dkt 73] (citing *Steinberg* v. *Elkman*, No. 15CV278-LTS-DCF, 2016 WL 796870, at *3

---

defendants in the original complaint but were dismissed as defendants by this Court's Order of January 4, 2017. [Dkt 33].

(S.D.N.Y. Feb. 22, 2016) (Swain, J.), *aff'd*, 666 F. App'x 26 (2d Cir. 2016)).  To date, Citizens Union has not offered any response to this authority.  To the contrary, Citizens Union has "*assure[d] the Court*" that it *will* dismiss the Governor as a party defendant, but only once pending discovery issues have been decided.  Letter from Randy Mastro (Apr. 25, 2017) [Dkt 76].  This is not even an argument.  It is nothing but a concession that there is no basis for the Governor to be sued and a plea that Citizens Union should nonetheless receive some sort of litigation benefit for improperly suing him.  Citizens Union should not be permitted to maintain claims that are not warranted by existing law in an effort to harass the Governor and in an attempt to bypass the protections Federal Rule of Civil Procedure 45 accords to non-parties.

On March 16, 2017, this Court entered an Order providing, *inter alia*, that the caption in this case should be changed from *Citizens Union of the City of New York, et al*. v. *The Governor of the State of New York, et al.*, to *Citizens Union of the City of New York, et al.* v. *The Attorney General of the State of New York, et al*.  [Dkt 60].  On April 26, 2017, this Court granted Governor Cuomo leave to file a motion to dismiss the Amended Complaint "based upon executive immunity from suit under the Eleventh Amendment."  [Dkt 78].

## ARGUMENT

### I.

### ALL CLAIMS AGAINST THE GOVERNOR ARE BARRED BY THE ELEVENTH AMENDMENT

The Eleventh Amendment to the United States Constitution provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  In 1890, the Supreme Court extended the prohibition to suits by citizens against their own state.  *Hans* v. *Louisiana*, 134 U.S. 1 (1890).  Thus, "suits in federal court

which name states as defendants are proscribed by the Eleventh Amendment, unless Congress has abrogated that state's Eleventh Amendment immunity, or the state has waived such immunity by unambiguously consenting to the suit." *Steinberg* v. *Elkman*, No. 15CV278-LTS-DCF, 2016 WL 796870, at *3 (S.D.N.Y. Feb. 22, 2016) (citing *Pennhurst State School & Hospital* v. *Halderman*, 465 U.S. 89, 100 (1984)), *reconsideration denied*, No. 15CV278-LTS-DCF, 2016 WL 1604764 (S.D.N.Y. Apr. 6, 2016), *aff'd*, 666 F. App'x 26 (2d Cir. 2016).

It is "'well settled that the ambit of the Eleventh Amendment's immunity includes a governor, in his official capacity.'" *Steinberg*, 2016 WL 796870, at *3 (quoting *Nunez* v. *Cuomo*, No. 11-CV-3457(DLI)(LB), 2012 WL 3241260, at *20 (E.D.N.Y. Aug. 7, 2012)). Thus, governors throughout the country have successfully raised Eleventh Amendment immunity to dismiss claims asserted against them. *See Mikolinski* v. *Connecticut*, 225 F.3d 646 (Table), 2000 WL 1121393 (2d Cir. 2000) (affirming dismissal of claims against Connecticut's governor, sued in his official capacity, on Eleventh Amendment grounds); *Ulrich* v. *Corbett*, 614 F. App'x 572, 574 (3d Cir. 2015) ("[G]overnors enjoy Eleventh Amendment immunity from suit for acts taken in their official capacities."); *Morris* v. *Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (affirming dismissal of governor on Eleventh Amendment grounds where he did not have a role with the enforcement of the challenged statute); *Association des Eleveurs de Canards et d'Oies du Quebec* v. *Harris*, 729 F.3d 937, 943 (9th Cir. 2013) ("Governor Brown is entitled to Eleventh Amendment immunity" where the lawsuit is based on "his general duty to enforce California law"); *Piedvache* v. *Ige*, No. 16-00138 DKW-RLP, 2016 WL 6516826, at *4 (D. Haw. Nov. 2, 2016) ("Eleventh Amendment immunity bars all claims for damages against Governor Ige in his official capacity."); *Pilot* v. *Snyder*, No. 15-13191, 2016 WL 6651847, at *2 (May 16, 2016) ("Pilot also fails to state a claim because, under the Eleventh Amendment, he cannot sue the

State, the Governor or the Attorney General in their official capacities."), *report and recommendation adopted*, No. 15-13191, 2016 WL 3548218 (E.D. Mich. June 30, 2016); *Nunez* v. *Cuomo*, No. 11-CV-3457 (DLI)(LB), 2012 WL 3241260, at *20 (E.D.N.Y. Aug. 7, 2012).

There is one notable exception to Eleventh Amendment immunity, but it is not applicable here. Under *Ex parte Young*, federal courts may entertain suits against state officials in their official capacity to enforce federal law where the suit seeks prospective injunctive and declaratory relief only. *Ex parte Young*, 209 U.S. 123 (1908); *see also State Employees Bargaining Agent Coalition* v. *Rowland*, 494 F.3d 71, 95 (2d Cir. 2007). However, if the state official does not have the authority to enforce the challenged legislation, the *Ex parte Young* exception does not apply. *See Steinberg* v. *Elkman*, 666 F. App'x 26, 27-28 (2d Cir. 2016); *see also Kelly* v. *New York State Civil Service Commission*, 632 F. App'x 17, 18 (2d Cir. 2016) ("[T]he district court correctly concluded that *Young* does not apply here. The state officer against whom prospective relief is sought 'must have some connection with the enforcement of the act' that violates federal law.") (citations omitted); *Scott* v. *Taylor*, 405 F.3d 1251, 1259 (11th Cir. 2005) ("[I]n a suit against state officials for injunctive relief, a plaintiff does not have Article III standing with respect to those officials who are powerless to remedy the alleged injury.").

As the Amended Complaint concedes (AC ¶ 15), it is the Attorney General who is charged with enforcing the Nonprofit Disclosure Provisions, not the Governor. The Amended Complaint correctly alleges no comparable enforcement authority by the Governor; it alleges only that he is "charged with the faithful execution of the laws of the State." (AC ¶ 14). This general responsibility is not a sufficient connection to the Nonprofit Disclosure Provisions such that the Governor could provide the relief requested in the Amended Complaint nor be obligated

to do so.  *See Aron* v. *Becker*, 48 F. Supp. 3d 347, 368 (N.D.N.Y. 2014) ("With respect to Governor Cuomo, the vast majority of courts to consider this issue have held that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute.") (citation and internal quotation marks omitted).  Likewise, in *Wang* v. *Pataki*, 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001), Judge Sweet dismissed the claims against Governor Pataki because the allegation that he "is required to ensure that the laws of the State of New York are faithfully and fairly executed" was "insufficient to state a claim against the Governor."  The court noted that "where the legislative enactment provides that entities other than the executive branch of the state are responsible for implementation of the statute no claim against the Governor lies."  *Id*; *see also Nichols* v. *Brown*, 859 F. Supp. 2d 1118, 1132 (C.D. Cal. 2012) (finding allegation that "[t]he Governor has the supreme executive power in the State and is responsible for the faithful execution of the laws of the State of California" is an insufficient, generalized connection); *Doe* v. *Jindal*, No. 15-1283, 2015 WL 7300506, at *5 (E.D. La. Nov. 18, 2015) ("Allegations that a state official has merely carried out his constitutional duties do not satisfy *Ex parte Young's* requirement that there be 'some connection' between the state official and enforcement of the allegedly unconstitutional act. . . Accordingly, the Court dismisses Doe's claims against Governor Jindal.") (citation omitted).  As such the Attorney General is the only proper defendant here and all claims against the Governor must be dismissed.

## II.
## ALL CLAIMS AGAINST THE GOVERNOR ARE ALSO BARRED BY THE DOCTRINE OF LEGISLATIVE IMMUNITY

Both the New York Constitution and the United States Constitution provide that "[f]or any speech or debate in either house of the legislature, the members shall not be questioned in any other place."  N.Y. Const. art. III, § 11; *see* Speech or Debate Clause of U.S. Const. art. I, §

6. Thus, legislators, including local legislators, are "entitled to absolute immunity from civil liability for their legislative activities." *Harhay* v. *Town of Ellington Board of Education*, 323 F.3d 206, 210 (2d Cir. 2003) (citing *Carlos* v. *Santos*, 123 F.3d 61, 66 (2d Cir.1997)). Legislative immunity shields from suit not only legislators, but also officials in the executive and judicial branches when they are acting "in a legislative capacity." *Bogan* v. *Scott-Harris*, 523 U.S. 44, 55 (1998) (holding that a mayor was entitled to legislative immunity for acts taken that were "integral steps in the legislative process").

The Amended Complaint alleges that the Governor's actions with respect to the Non-Profit Disclosure Provisions were that he "announc[ed] the legislation in question" by issuing a press release encouraging the Legislature to vote on the legislation, (AC ¶¶ 38-40); he issued a "Message of Necessity" to the Assembly and Senate regarding the length of the pre-vote review period, (AC ¶ 43); and he signed the final bill, (AC ¶ 52). These actions all fall within the sphere of legislative activity protected by legislative immunity. *See State Employees Bargaining Agent Coalition* v. *Rowland*, 494 F.3d 71, 82 (2d Cir. 2007) ("'Absolute legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity."'") (quoting *Bogan*, 523 U.S. at 54).

Courts within the Second Circuit and across the country routinely dismiss claims brought against governors for the same legislative actions alleged here. *See Brooks* v. *Spitzer*, No. 9:13-CV-1483 (GLS/ATB), 2014 WL 8276494, at *11 (N.D.N.Y. Dec. 3, 2014) ("Clearly, plaintiff is attempting to hold defendant Spitzer responsible for the purely legislative act of signing a statute into law. As such, this falls squarely into the conduct protected by legislative immunity, and the complaint may be dismissed as against defendant Spitzer."), *report and recommendation adopted in part, rejected in part on other grounds*, *Brooks* v. *Spitzer*, No. 9:13-CV-1483

(GLS/ATB), 2015 WL 1313243 (N.D.N.Y. Mar. 24, 2015); *New York State Motor Truck Association* v. *Pataki*, No. 03CV2386, 2004 WL 2937803, at *11 (S.D.N.Y. 2004) (legislative immunity bars action against governors on the basis of their role in enacting legislation); *Warden* v. *Pataki*, 35 F. Supp. 2d 354, 358-59 (S.D.N.Y.) ("[T]he State Defendants' motion to dismiss both cases pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim must be granted. The principal basis for plaintiffs' claims against the State Defendants is the State Defendants' role in enacting the legislation at issue. . . . The well-settled doctrine of absolute legislative immunity, however, bars actions against legislators or governors . . . on the basis of their roles in enacting or signing legislation.") (citations omitted), *aff'd sub nom. Chan* v. *Pataki*, 201 F.3d 430 (2d Cir. 1999); *Women's Emergency Network* v. *Bush*, 323 F.3d 937, 950 (11th Cir. 2003) ("Appellants further contend Governor Bush is a proper party because he signed Fla. Stat. § 320.08058 into law. This argument, too, must fail. Under the doctrine of absolute legislative immunity, a governor cannot be sued for signing a bill into law.") (citing *Supreme Court of Virginia* v. *Consumers Union of United States, Inc.*, 446 U.S. 719, 731–34 (1980)); *Hodges* v. *Strauss*, No. 16CV2905-GPC(RBB), 2016 WL 7229677, at *2 (S.D. Cal. Dec. 14, 2016) ("'[A] governor is entitled to absolute immunity for the act of signing a bill into law.'") (quoting *Nichols* v. *Brown*, 859 F. Supp. 2d 1118, 1132 (C.D. Cal. 2012)).

## CONCLUSION

There is no reason why the Governor should have been put to the task of preparing and filing this motion and there is no reason that this Court should have been put to the task of considering and deciding it. Whether viewed through the prism of the Eleventh Amendment or the doctrine of legislative immunity, the Governor should never have been named in this action at all.

The Governor respectfully requests that all claims against him be dismissed in their entirety and with prejudice.

Dated: New York, New York
       May 15, 2017

/s Floyd Abrams
**CAHILL GORDON & REINDEL LLP**
Floyd Abrams
Susan Buckley
Tammy Roy
80 Pine Street
New York, New York 10005
(212) 701-3000
fabrams@cahill.com
sbuckley@cahill.com
troy@cahill.com

*Attorneys for Governor Andrew Cuomo*