UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
 :
CITIZENS UNION OF THE CITY OF NEW :
YORK et al., :
 :
 :
 Plaintiffs, :
 : No. 16-cv-9592 (RMB) (KHP)
 -against- :
 :
THE ATTORNEY GENERAL OF THE :
STATE OF NEW YORK et al., :
 :
 Defendants. :
------------------------------------------------------------x

**PLAINTIFFS CITIZENS UNION AND CITIZENS UNION FOUNDATION'S
MEMORANDUM OF LAW IN OPPOSITION
TO THE GOVERNOR'S MOTION TO DISMISS**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiffs Citizens Union of the
City of New York and Citizens Union
Foundation, Inc. of the City of New York*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

LEGAL STANDARD.................................................................................................................... 3

ARGUMENT .................................................................................................................................. 4

I. The Governor Is Not Entitled to Executive Immunity........................................................ 4

II. The Governor Is Not Entitled to Legislative Immunity...................................................... 8

CONCLUSION............................................................................................................................... 9

## TABLE OF AUTHORITIES

Page

**Cases**

*Ass'n of Am. Medical Colleges v. Carey*,
    482 F. Supp. 1358 (N.D.N.Y. 1980) ................................................................................4

*Ass'n of Am. Medical Colleges v. Cuomo*,
    928 F.2d 519 (2d Cir. 1991) .............................................................................................5

*Bogan v. Scott-Harris*,
    523 U.S. 44 (1998) ........................................................................................................8, 9

*Matter of Carey*,
    68 A.D.2d 220 (4th Dep't 1979) .......................................................................................7

*Cooper v. Harris*,
    2017 WL 2216930 (U.S. May 22, 2017) ..........................................................................5

*In re Dairy Mart Convenience Stores, Inc.*,
    411 F.3d 367 (2d Cir. 2005) .............................................................................................8

*In re di Brizzi*,
    303 N.Y. 206 (1951) .........................................................................................................6

*Fed. Nat'l Mortg. Ass'n v. Lefkowitz*,
    383 F. Supp. 1294 (S.D.N.Y. 1974) ..................................................................................4

*Idaho v. Coeur d'Alene Tribe*,
    521 U.S. 261 (1997) ..........................................................................................................3

*Johnson v. Rockefeller*,
    58 F.R.D. 42 (S.D.N.Y. 1972) ..........................................................................................4

*Moore v. Ogilvie*,
    394 U.S. 814 (1969) ..........................................................................................................5

*Matter of N.Y. Republican State Comm. v. N.Y. State Comm'n on Gov't Integrity*,
    138 Misc. 2d 790 (Sup. Ct. 1988) .....................................................................................7

*Oneida County v. Berle*,
    49 N.Y.2d 525 (1980) .......................................................................................................4

*Patsy v. Bd. of Regents of State of Fla.*,
    457 U.S. 496 (1982) ..........................................................................................................5

*Rapp v. Carey*,
    44 N.Y.2d 157 (1978) .......................................................................................................7

## TABLE OF AUTHORITIES
(continued)

Page

*State Emps. Bargaining Agent Coal. v. Rowland*,
   494 F.3d 71 (2d Cir. 2007)..................................................................................................9

*Supreme Court of Va. v. Consumers Union of U.S., Inc.*,
   446 U.S. 719 (1980)............................................................................................................9

*Verizon Md., Inc. v. Public Serv. Comm'n of Md.*,
   535 U.S. 635 (2002)........................................................................................................1, 4

*Wells v. Rockefeller*,
   394 U.S. 542 (1969)............................................................................................................5

*Williams v. Rhodes*,
   393 U.S. 23 (1968)..............................................................................................................5

*Young. Socialist Workers Party v. Rockefeller*,
   314 F. Supp. 984 (S.D.N.Y. 1970)...................................................................................4, 5

*Ex parte Young*,
   209 U.S. 123 (1908).............................................................................................3, 5, 7, 8

**Statutes**

N.Y. Exec. Law § 60.....................................................................................................................7

N.Y. Exec. Law § 63.....................................................................................................................6

N.Y. Exec. Law § 94.....................................................................................................................7

N.Y. Exec. Law § 172-e................................................................................................................3

N.Y. Exec. Law § 172-f................................................................................................................3

N.Y. Exec. Law § 175...................................................................................................................6

N.Y. Exec. Law § 177...................................................................................................................6

**Rules**

Fed. R. Civ. P. 12(g)(2).................................................................................................................2

**Constitutional Provisions**

N.Y. Const., art. IV, § 3................................................................................................................4

Plaintiffs Citizens Union of the City of New York and Citizens Union Foundation, Inc. of the City of New York (together, "Citizens Union") submit this memorandum of law in opposition to Defendant Governor Cuomo's motion to dismiss.

## PRELIMINARY STATEMENT

The issue before this Court is a narrow one—whether the Governor's enforcement authority under this statute is sufficient to permit this suit to proceed against him—but once again, the Governor mischaracterizes the facts, law and context, rather than sticking to the issue at hand. The day of reckoning for this unconstitutional statute will come soon enough, but for today, it suffices that the Governor, in his official capacity, should remain a party to this lawsuit.

The Court granted the Governor leave to move to dismiss on one specific basis: the Governor's purported "executive immunity from suit under the Eleventh Amendment," *see* Dkt. 78 at 1, which reduces to the question of whether the Governor bears sufficient enforcement authority under state law with respect to the legislation at issue to fall within the *Ex parte Young* exception to executive immunity, 209 U.S. 123 (1908). Yet the Governor dedicates nearly half his brief to irrelevant and misleading statements about inapplicable legal principles in what appears to be an attempt to make a misplaced merits argument in the context of this limited motion. That is improper: the Supreme Court has expressly held that "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 646 (2002). To be clear, the Governor and his counsel are wrong on the merits, as we will explain in detail at the appropriate time, because what the Governor has done here through this legislation targeting good government groups with onerous

1

disclosure and reporting requirements violates the First Amendment.[1]  But that is not the issue to be decided today.  The issue for today is whether the Governor has sufficient enforcement authority here to permit this suit to proceed against him in the face of his immunity defense.  Accordingly, Citizens Union will focus its brief on whether the Governor is immune from this suit—the *only* ground on which the Court granted the Governor permission to move for dismissal.[2]

      The Governor is not immune from Citizens Union's lawsuit.  Courts have applied the *Ex parte Young* exception to the Governor of New York on the basis of his responsibility to execute the laws of New York under the state constitution's Take Care Clause.  Moreover, in citing cases finding immunity when a governor's only involvement was the signing of a bill in question, the Governor completely ignores that here he did so much more:  he championed the legislation in

---

[1] For example, this case falls squarely within the line of U.S. Supreme Court decisions holding that it violates the First Amendment for the government to compel the disclosure of those supporting or involved in public advocacy outside the electioneering context (and even within it, where there is a reasonable fear of government retaliation for that support).  *See, e.g.*, *Talley v. California*, 362 U.S. 60 (1960); *NAACP v. Alabama*, 357 U.S. 449 (1958); *see also* April 25, 2017 Hr'g Tr. 51:13-52:23; Dkt. 41 (Amended Compl.) ¶¶ 85-88, 95-98, and Counts III & IV.  Instead of addressing these decisions, the Governor cites cases requiring disclosure of donor information in the context of *electoral* communications—specifically, where funding for electoral communications falls within the McCain-Feingold Act's narrowly tailored disclosure requirements because the communications contain explicit references to a particular candidate, were made within 60 days of an election in which the candidate was running for office, and the money was specifically dedicated for the purpose of that candidate-specific ad.  *See* April 25 Hr'g Tr. 50:9-51:12.  The Governor attempts to characterize the provisions at issue here as "similar" to these electioneering regulations, Dkt. 83 (Gov. MTD) at 3-4, but the challenged provisions here contain *none* of these limitations and affect vast swaths of speech wholly unrelated to any specific candidate or election, *see* Dkt. 41 ¶¶ 117–121, 133–141.  Indeed, the Governor has previously admitted to the Court that he is "unaware of any other state" that has enacted disclosure requirements similar to those as issue here.  Dkt. 27 (Gov. Letter to Court) at 3.

[2] The Governor purports to reserve all other grounds for a motion to dismiss under Rule 12(b), yet simultaneously argues that dismissal is appropriate based on legislative immunity.  *See* Dkt. 83 at 1 n.1, 9-11.  The Governor's inclusion of this additional ground has nullified any purported reservation of rights, as the Federal Rules do not permit a party to pick and choose *seriatim* grounds for dismissal (particularly where a party has ignored a court order limiting the issues for present consideration).  *See* Fed. R. Civ. P. 12(g)(2).

question, possesses significant oversight and statutory authority over the Attorney General and the Joint Commission on Public Ethics, and has already demonstrated specific intent to see the legislation enforced against Citizens Union. Indeed, the Governor has authority to direct the Attorney General, to appoint commissioners and the chair of the Joint Commission on Public Ethics (JCOPE), and to influence the direction of that body—which has an enforcement role in implementing this legislation, including having to publish filings. All of this makes the Governor an appropriate party to this lawsuit, and demonstrates that the Governor's participation in the lawsuit—not only as the primary architect of the challenged provisions but as their chief advocate for enforcement against Citizens Union—is necessary to ensure that the Governor is bound by any order enjoining enforcement of Executive Law § 172-e and 172-f (the "Nonprofit Disclosure Provisions"). His immunity defense is a transparent attempt to try to get out of this lawsuit to evade or narrow the discovery of his office that is now imminent, and it should fail.

## LEGAL STANDARD

It is a bedrock principle of federalism that federal courts may enjoin state officials from enforcing state law that violates the federal constitution, notwithstanding the Eleventh Amendment's general bar on suits against the states, so long as the named official has "some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157. *Ex parte Young* expressly rejected the idea that this minimal connection to enforcement must result from the specific statute itself, instead holding that a sufficient connection may "arise[] out of the general law" of the state. *Id.* This strikes a proper balance, "to ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law." *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 269 (1997). Accordingly, in adjudicating the Governor's motion, this Court "need only conduct a straightforward analysis into

whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon*, 535 U.S. at 645.

## ARGUMENT

### I. The Governor Is Not Entitled to Executive Immunity.

The New York State Constitution provides that the governor must "take care that the laws are faithfully executed." N.Y. Const., art. IV, § 3.  As the New York Court of Appeals has recognized, this constitutional provision makes the Governor "duty bound" to see a duly enacted law enforced.  *Oneida County v. Berle*, 49 N.Y.2d 525, 523 (1980).

Contrary to the Governor's misleading presentation, numerous courts within this Circuit have concluded that this constitutional obligation *alone* brings the Governor within the *Ex parte Young* exception to Eleventh Amendment immunity.  For example, this Court has explicitly rejected the Governor's argument that *Ex parte Young* demands an additional "'special relation' to the enforcement of the statutes under attack" and instead concluded that the governor's office "specially authorized" him under the Take Care Clause to enforce the statutes, satisfying *Young*. *Socialist Workers Party v. Rockefeller*, 314 F. Supp. 984, 988 n.7 (S.D.N.Y.), *aff'd*, 400 U.S. 806 (1970).  Likewise, this Court has repeatedly reasoned that the "constitutional mandate" to enforce the state's laws "provides a sufficient connection with the enforcement of the statute to make the Governor a proper defendant." *Fed. Nat'l Mortg. Ass'n v. Lefkowitz*, 383 F. Supp. 1294, 1298 (S.D.N.Y. 1974) (citing cases); *Johnson v. Rockefeller*, 58 F.R.D. 42, 46 (S.D.N.Y. 1972), *aff'd sub nom Butler v. Wilson*, 415 U.S. 953 (1974); *accord Ass'n of American Medical Colleges v. Carey*, 482 F. Supp. 1358, 1363 (N.D.N.Y. 1980) (adopting this Court's reasoning and permitting suit naming Governor Carey as lead defendant), *reversed on other grounds sub nom. Ass'n of Am. Medical Colleges v. Cuomo*, 928 F.2d 519 (2d Cir. 1991) (substituting Governor Mario Cuomo as lead defendant).

4

In fact, as this Court has noted, the Supreme Court has repeatedly adjudicated cases with a governor named as a defendant without finding any immunity issues (on its own motion or by the governor). *See Socialist Workers Party*, 314 F. Supp. at 988 n.7 (citing *Moore v. Ogilvie*, 394 U.S. 814 (1969), *Wells v. Rockefeller*, 394 U.S. 542 (1969), and *Williams v. Rhodes*, 393 U.S. 23 (1968)); *see also Cooper v. Harris*, 2017 WL 2216930 (U.S. May 22, 2017) (deciding suit against governor of North Carolina); *cf. Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 515 n.19 (1982) (discussing question posed from the bench regarding the application of the Eleventh Amendment to a state agency when a party had not briefed the issue to the Court). Thus, there is authority within this circuit (which the Governor ignores) finding that the Take Care Clause alone is sufficient under *Ex parte Young*, and both the Second Circuit and Supreme Court have decided cases in which a governor was named, in his official capacity, as a defendant. *See, e.g.*, *Cooper*, 2017 WL 2216930; *Cuomo*, 928 F.2d 519. This line of cases supports rejecting the Governor's motion to dismiss.

To the extent the Governor cites cases to the contrary, they arise on different facts. Here, the Governor has done much more than merely Take Care that the law be enforced. He is an architect of the legislation, retains authority to direct state agencies with enforcement power, and has specifically called for the enforcement of the legislation against particular entities, including the instant plaintiffs. Such conduct more than exceeds the "some connection" threshold of *Ex parte Young*, 209 U.S. at 157, and warrants denying the Governor's motion regardless of whether the Take Care Clause alone would be sufficient.

As Plaintiffs have alleged, and the Governor does not dispute, the Governor is the prime mover behind the legislation at issue here, both by proposing it as a Governor's Program Bill and by issuing a message of necessity that allowed the legislation to be introduced and pushed through

without public scrutiny in a matter of hours, far less than the constitutionally provided three days of debate.  *See* Dkt. 41 ¶ 39; *see also id.* ¶¶ 38, 43–44.  Moreover, the Governor's representatives have publicly stated that these laws should be enforced against Plaintiffs and similar entities.  For example, after Citizens Union raised concerns about the legislation, the Governor's spokesperson expressly called for "more disclosure by not-for-profits as to who actually funds them," and stated that whether groups like Citizens Union were "shadow lobbyists" were topics under discussion.  *Id.* ¶ 55; *see also id.* ¶ 33.  These threats of enforcement are not anomalous events:  The Governor has made it a routine practice to single out advocacy groups, like Plaintiffs, for special attack when they oppose or criticize his legislative activities.  *See id.* ¶ 34 (describing the Governor's attacks on former aides who criticize his actions).  The Governor has therefore demonstrated both an interest and a will in pursuing the enforcement of these statutes.

And New York law empowers the Governor to act in furtherance of the enforcement of these statutes.  The Governor also wields specific statutory authority over the Office of the Attorney General and can use his executive powers to investigate and press enforcement of the Nonprofit Disclosure Provisions.  The Governor admits—as he must—that the Attorney General has enforcement authority with regard to these provisions.  *See* Dkt. 83 at 5, 8; *see also* N.Y. Exec. Law §§ 175, 177 (identifying mechanisms for enforcement by the Attorney General).  But the Governor omits mentioning that the New York Executive Law *specifically* empowers him to direct the Attorney General to undertake investigations or to prosecute violations of New York law or "matters concerning the public peace, public safety, or public justice."  N.Y. Exec. Law § 63[3], [8]; *see also In re di Brizzi*, 303 N.Y. 206, 216 (1951) (upholding governor-directed investigation "since there is a reasonable relation between the action taken by the Governor, through the Attorney General, and the proper discharge of the executive function").  These provisions have

6

been interpreted expansively to "confer[] general investigative powers and provide[s] a means whereby the Governor and the Attorney-General may acquire information to guide them in the performance of their executive duties," *Matter of Carey*, 68 A.D.2d 220, 224 (4th Dep't 1979), including in pursuing investigations related to enforcing New York's election laws, *see Matter of N.Y. Republican State Comm. v. N.Y. State Comm'n on Gov't Integrity*, 138 Misc. 2d 790 (Sup. Ct.), *aff'd*, 140 A.D.2d 1014 (1st Dep't 1988).  Thus, the Governor may effectively pursue enforcement of the Nonprofit Disclosure Provisions by directing the Attorney General's investigative and prosecutorial powers against entities regulated by these statutes.

But that's not all.  The Governor "is accorded great flexibility in determining the methods of enforcement" of statutes, including through the use of executive orders.  *Rapp v. Carey*, 44 N.Y.2d 157, 153 (1978).  The Governor wields indirect but substantial enforcement authority through his power to appoint six of fourteen members of JCOPE—the single largest block of appointees to the commission—and JCOPE's chair.  *See* N.Y. Exec. Law § 94[2].  And the Governor has broad authority under the Moreland Act (which he has used in recent years) to "examine and investigate the management and affairs of any department, board, bureau or commission of the state"—including the law department and JCOPE (*see* Exec. Law §§ 60, 94), which are responsible for the reporting and disclosure requirements imposed by the Nonprofit Disclosure Provisions.

Taken together, the Governor's powers in this area—and his demonstrated intent to see the law enforced against Citizens Union in particular—are sufficient to establish the requisite connection between the challenged statutes and his state office.  *See Ex parte Young*, 209 U.S. at 157 ("The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general

law, or is specially created by the act itself, is not material so long as it exists.").[3]  Put simply, the Governor is incorrect in suggesting that Citizens Union is attempting to sidestep Eleventh Amendment immunity by naming the Governor as a defendant when he is no more than a generic official who signed the Nonprofit Disclosure Provisions.  Instead, as Citizens Union has consistently emphasized, it named the Governor as a defendant *in this particular lawsuit* because he has demonstrated both the will and authority to enforce the language he drafted, pressed, and enacted—including its implementation against good government groups like Citizens Union that the Governor chooses to term "shadow lobbyists."  Accordingly, the Governor is a proper defendant, sued only in his official capacity for prospective injunctive relief, and cannot claim Eleventh Amendment immunity from suit.

## II.     The Governor Is Not Entitled to Legislative Immunity.

Nor should the Governor be dismissed on legislative immunity grounds (putting aside that the Court did not give the Governor permission to move to dismiss on that basis).  The Governor's arguments as to legislative immunity simply are not implicated in this case.  A defendant may only "invoke legislative immunity to defeat a claim for injunctive relief" where he demonstrates:

> (1) that the acts giving rise to the harm alleged in the complaint . . . were undertaken when defendants were acting in their legislative capacities under the functional test set forth in [*Bogan v. Scott-Harris*, 523 U.S. 44 (1998)], and (2) that the particular relief sought . . . would enjoin defendants in their legislative capacities, and not in some other capacity in which would not be entitled to legislative immunity.

---

[3] The Governor is wrong to argue that he lacks a sufficient connection to the Nonprofit Disclosure Provisions merely because the statute only mentions enforcement by the Attorney General and JCOPE.  *See* Dkt. 83 at 5, 8.  As noted above, sufficient connection to the statutes in question may be derived from "the general duties of the officer to enforce it as a law of the state," "even though such authority is not to be found in the particular act." *Ex parte Young*, 209 U.S. at 158; *see also In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 373 (2d Cir. 2005) ("So long as there is such a connection, it is not necessary that the officer's enforcement duties be noted in the act.").

*State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 88 (2d Cir. 2007). Therefore, where the injunctive relief sought either compels or prohibits an act that is *not* legislative in nature, legislative immunity is inapplicable.

That is exactly the situation here. First, as is self-evident, the acts giving rise to Citizens Union's constitutional injury—suppression of its First Amendment rights—would be the *enforcement* of the statutes, not their passage. Second, and most instructively, Citizens Union explicitly seeks only declaratory and injunctive relief against such enforcement. *See* Dkt. 41 ¶¶ 153, 158, 163, 168; *see also id.* at 44-45. Thus, in no way would Citizens Union's requested relief constrain the Governor's *legislative* authority, either by compelling or prohibiting a legislative act. *Rowland*, 494 F.3d at 88. And, as the cases relied on by the Governor indicate, because he has independent, "inherent and statutory enforcement powers" that Citizens Union may properly seek to enjoin, he is not entitled to legislative immunity for the same reason that he is not entitled to Eleventh Amendment immunity. *See id.* (basing analysis on *Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 734-37 (1980)); *accord* Dkt. 83 at 11 (citing cases addressing the governor's connection to enforcement before addressing any arguable relief premised on purely legislative actions).

## CONCLUSION

For the foregoing reasons, the Governor's motion to dismiss should be denied.

Dated: New York, New York
June 5, 2017

GIBSON, DUNN & CRUTCHER LLP

By: <u>Randy M. Mastro</u>
Randy M. Mastro
Akiva Shapiro
Gabriel K. Gillett

200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiffs Citizens Union of the City of New York and Citizens Union Foundation, Inc. of the City of New York*

10