UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITIZENS UNION OF THE CITY OF NEW YORK, et al.,

                Plaintiffs,

           v.

THE ATTORNEY GENERAL OF THE STATE OF NEW YORK, et al.,

                Defendants.

16-cv-9592 (RMB) (KHP)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF GOVERNOR ANDREW CUOMO'S MOTION TO DISMISS THE AMENDED COMPLAINT**

                                  CAHILL GORDON & REINDEL LLP
                                      Floyd Abrams
                                      Susan Buckley
                                      Tammy Roy
                                      80 Pine Street
                                      New York, New York 10005
                                      (212) 701-3000

                                  *Attorneys for Governor Andrew Cuomo*

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

    I.     THE *EX PARTE YOUNG* EXCEPTION DOES NOT APPLY HERE ...................... 3

    II.    THE DOCTRINE OF LEGISLATIVE IMMUNITY BARS CLAIMS RELATED TO THE "PASSAGE" OF THE LEGISLATION .................................. 9

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ass'n of American Medical Colleges* v. *Cuomo*,
   928 F.2d 519 (2d Cir. 1991)..................................................................................................8n

*Ass'n of American Medical Colleges* v. *Carey*,
   482 F. Supp. 1358 (N.D.N.Y. 1980)........................................................................................4

*Chan* v. *Pataki*,
   201 F.3d 430 (Table), 1999 WL 1012404 (2d Cir. 1999)...................................................... 3-4

*Concerned Home Care Providers, Inc.* v. *Cuomo*,
   979 F. Supp. 2d 288, 299 (N.D.N.Y. 2013) *aff'd*, 783 F.3d 77 (2d Cir. 2015) .........................4

*Cooper* v. *Harris*,
   No. 15-1262, 2017 WL 2216930 (U.S. May 22, 2017)..........................................................8n

*Fed. Nat'l Mortg. Ass'n* v. *Lefkowitz*,
   383 F. Supp. 1294 (S.D.N.Y. 1974).........................................................................................4

*Friedman* v. *Hi-Li Manor Home For Adults*,
   42 N.Y.2d 408 (1977) .............................................................................................................7n

*Johnson* v. *Rockefeller*,
   58 F.R.D. 42 (S.D.N.Y. 1972) .................................................................................................4

*Kelly* v. *New York State Civil Service Commission*,
   632 F. App'x 17 (2d Cir. 2016) ................................................................................................3

*Moore* v. *Ogilvie*,
   394 U.S. 814 (1969).................................................................................................................8n

*N.Y. State Motor Truck Ass'n* v. *Pataki*,
   No. 03 CV 2386 (GBD), 2004 WL 2937803 (S.D.N.Y. Dec. 17, 2004).................................4

*Nolan* v. *Cuomo*,
   No. 11 CV 5827 (DRH) (AKT), 2013 WL 168674 (E.D.N.Y. Jan. 16, 2013).........................5

*Patsy* v. *Bd. of Regents*,
   457 U.S. 496 (1982).................................................................................................................8n

*Rapp* v. *Carey*,
   44 N.Y.2d 157 (1978)...............................................................................................................8

*State Emps. Bargaining Agent Coal.* v. *Rowland*,
    494 F.3d 71 (2d Cir. 2007) ........................................................................................... 9

*Sullivan* v. *N.Y. State Unified Court Sys.*,
    No. 15-CV-4023 (JPO), 2016 WL 3406124 (S.D.N.Y. June 17, 2016) ..................... 4

*Supreme Court of Va.* v. *Consumers Union of U.S., Inc.*,
    446 U.S. 719 (1980) ............................................................................................. 9-10

*United States* v. *N.Y.*,
    No. 5:04-CV-00428, 2007 WL 951576 (N.D.N.Y. Mar. 27, 2007) ........................... 4

*Wang* v. *Pataki*,
    164 F. Supp. 2d 406 (S.D.N.Y. 2001) .................................................................. 5, 8

*Wang* v. *Pataki*,
    396 F. Supp. 2d 446 (S.D.N.Y. 2005) ..................................................................... 7

*Warden* v. *Pataki*,
    35 F. Supp. 2d 354 (S.D.N.Y. 1999), *aff'd*
    *Chan* v. *Pataki*, 201 F.3d 430, 1999 WL 1012404 (2d Cir. 1999) ..................... 2-3

*Wells* v. *Rockefeller*,
    394 U.S. 542 (1969) ............................................................................................... 8n

*Williams* v. *Rhodes*,
    393 U.S. 23 (1968) ................................................................................................. 8n

*Ex Parte Young*,
    209 U.S. 123 (1908) ............................................................................................ 1, 3

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ........................................................................... 1

Federal Rule of Civil Procedure 12(b)(6) ........................................................................... 1

**Statutes**

N.Y. Exec. Law
    § 63[3] ....................................................................................................................... 7
    § 63[8] ..................................................................................................................... 7n

Defendant Andrew Cuomo, Governor of the State of New York ("the Governor"), respectfully submits this reply memorandum of law in further support of his motion to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The parties before this Court agree that since the ruling of the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908), the law has been plain that a governor may only properly be a defendant in a case such as this when he or she has enforcement authority with respect to the statute at issue. Consistent with that proposition, Citizens Union's brief does not take issue with or dispute the vast number of cases from and within the Second Circuit and Courts of Appeals throughout the nation that have dismissed governors and other public officials in litigations that challenge the constitutionality of statutes over which they do not have enforcement authority.

Indeed, until the filing of its memorandum of law in opposition to the Governor's motion to dismiss, Citizens Union had never even suggested that the Governor had *any* such direct authority. The Amended Complaint itself asserts, quite correctly, that "the Attorney General is charged with the administration and enforcement of the Nonprofit Disclosure Provisions" (AC ¶ 15), but makes no such claim—as it could not—that the Governor has any such power. So clear was this proposition that shortly after initiating this action, Citizens Union entered into a stipulation with the Attorney General only, and not the Governor, providing for a temporary stay of enforcement of the Nonprofit Disclosure Provisions pending this Court's decision on Plaintiffs' yet-to-be-filed motion for a preliminary injunction. Dec. 27, 2016 Stipulation [Dkt. 16] ("AG shall not take any action to enforce, or direct the enforcement of, the Nonprofit Disclosure Provisions in any respect."). And so indisputable was it that the Governor had no enforcement authority, in its letter to the Court of April 25, 2017 urging the Court to deny the

-1-

Governor the opportunity even to make this motion, Citizens Union said nothing about the issue as it "assure[d]" the Court that it would dismiss the Governor as a party after it gained whatever benefits it assumed it would receive in discovery as a result of his party status. Apr. 25, 2017 Letter [Dkt 76].

Faced with the dismissal of its claims, Citizens Union pivots to a new position and now seeks to demonstrate that the Governor has some sort of *indirect* authority over enforcement of the Nonprofit Disclosure Provisions. But there is no creditable support for that proposition either. First, Citizens Union argues that the Governor's enforcement power derives from his constitutional responsibility to "faithfully execute the laws of the state," Opp. at 4-5, relying only on cases predating *Warden* v. *Pataki*, 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999), *aff'd Chan* v. *Pataki*, 201 F.3d 430 (Table), 1999 WL 1012404 (2d Cir. 1999), which soundly rejected the identical argument. Second, Citizens Union points to powers inherent in the office of the Governor: to form a Moreland commission to investigate agencies, to issue executive orders, and to direct investigations of criminal matters "connected with" the office of the Governor (which the Nonprofit Disclosure provisions are not). This novel theory is wholly without support and has never been a bar to the dismissal of numerous actions against governors possessing the same inherent authority. Citizens Union's additional argument that the Governor can appoint members to JCOPE (which has the responsibility of publishing reports derived from disclosures made pursuant to the Nonprofit Disclosure Provisions) is even more attenuated. None of the above confer on the Governor the authority to release Citizens Union, or any other nonprofit, from its reporting responsibilities under the Nonprofit Disclosure Provisions so as to effectuate the relief Citizens Union seeks, and thus to be considered as a proper party.

Finally, Citizens Union reverses course yet again and now claims its injuries are not the

result of the "passage" of the Nonprofit Disclosure Provisions, but only of its "enforcement" (Opp. at 9), a curious proposition considering the law has yet to be enforced and an implicit concession that this action is not ripe. Regardless, any role the Governor had in drafting the legislation does not confer authority to enforce its terms.

## ARGUMENT

I. **THE *EX PARTE YOUNG* EXCEPTION DOES NOT APPLY HERE**

As set forth in the Governor's moving brief, there is one exception to Eleventh Amendment immunity as to officials who are capable of granting injunctive relief due to their "connection with the enforcement of [an] act" "alleged to be unconstitutional." *Ex Parte Young*, 209 U.S. at 157. Where a state official does not have the authority to enforce challenged legislation, the *Ex parte Young* exception does not apply. *Kelly* v. *New York State Civil Service Commission*, 632 F. App'x 17, 18 (2d Cir. 2016).

The "connection with the enforcement of an act" exception requires tangible enforcement responsibilities beyond the generalized duty to "take care that the laws are faithfully executed." (Opp. at 4-5). In *Warden* v. *Pataki*, the plaintiffs likewise alleged that the Eleventh Amendment could be overcome due to the "Governor's duty under the New York Constitution to 'take care that the laws are faithfully executed.'" *Warden* v. *Pataki*, 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999) (citation omitted). In rejecting that argument, Judge Mukasey observed that "the vast majority of courts to consider the issue have held—correctly, in my view—that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute." *Id*. The Second Circuit subsequently affirmed the decision "for substantially the reasons stated by the district court." *Chan* v. *Pataki*, 201 F.3d 430 (Table), 1999 WL 1012404 (2d Cir. 1999). Subsequent decisions have found the *Warden* and *Chan*

decisions dispositive on the issue. *See Sullivan* v. *N.Y. State Unified Court Sys.*, No. 15-CV-4023 (JPO), 2016 WL 3406124, at *7 (S.D.N.Y. June 17, 2016) ("[A] state official's generalized duty to 'take care that the laws are faithfully executed' is insufficient to trigger *Ex parte Young*. . . .") (quoting *Warden*, 35 F. Supp. 2d at 359); *Concerned Home Care Providers, Inc.* v. *Cuomo*, 979 F. Supp. 2d 288, 299 (N.D.N.Y. 2013) ("The general authority of the Governor of New York State to 'take care that the laws are faithfully executed,' N.Y. Const. art. 4, § 3, is not sufficient to make him a proper party in this action.") (citing, *inter alia*, *Warden*, 35 F. Supp. 2d at 359), *aff'd*, 783 F.3d 77 (2d Cir. 2015); *N.Y. State Motor Truck Ass'n* v. *Pataki*, No. 03 CV 2386 (GBD), 2004 WL 2937803, at *11 (S.D.N.Y. Dec. 17, 2004) ("'[T]he vast majority of courts . . . have held . . . that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute.'") (quoting *Warden*, 35 F. Supp. 2d at 359).

The handful of cases Citizens Union cites to the contrary all predate *Chan* v. *Pataki* and are no longer good law. (*See* Opp. at 4 (citing *Socialist Workers Party* v. *Rockefeller*, 314 F. Supp. 984, 988 n.7 (S.D.N.Y. 1970); *Fed. Nat'l Mortg. Ass'n* v. *Lefkowitz*, 383 F. Supp. 1294, 1298 (S.D.N.Y. 1974); *Johnson* v. *Rockefeller*, 58 F.R.D. 42, 46 (S.D.N.Y. 1972); *Ass'n of American Medical Colleges* v. *Carey*, 482 F. Supp. 1358, 1363 (N.D.N.Y. 1980))). Indeed, subsequent decisions have repeatedly criticized the decision in *Carey* as "soundly rejected" by subsequent authority, a fact that even the most cursory shepardizing of the case would have revealed. *See United States* v. *N.Y.*, No. 5:04-CV-00428 (NAM/DEP), 2007 WL 951576, at *2 (N.D.N.Y. Mar. 27, 2007) ("Plaintiff contends that the Governor's duty to 'take care that the laws are faithfully executed' provides a sufficient connection to enforcement of NVRA. *See* [*Carey*]. Indeed, as noted by defendants, this proposition of law has been soundly rejected by

...
...

subsequent courts."); *Wang* v. *Pataki*, 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001) ("Plaintiffs' reliance on [*Carey*] in support of their argument that the Governor's general executive duty is an adequate basis for liability is misplaced."); *Nolan* v. *Cuomo*, No. 11 CV 5827 (DRH) (AKT), 2013 WL 168674, at *10 (E.D.N.Y. Jan. 16, 2013) ("Plaintiff relies solely upon [*Carey*], where the court found that the governor's general duty to 'take care that the laws are faithfully executed' was a sufficient connection to the enforcement of the statute in question so as to make him a proper party to a suit challenging that statute's constitutionality. . . That decision, however, 'has been soundly rejected by subsequent courts,' . . . and is not persuasive authority for this Court.") (citations omitted).  The so-called "take care" clause does not defeat the Governor's immunity under the Eleventh Amendment.  That Citizens Union chose to assert such an untenable argument without even addressing *Warden* and *Chan* in its brief is more than a little troubling.

Nor has Citizens Union pointed to any direct enforcement authority exercisable or exercised by the Governor.  Instead, Citizens Union has manufactured a theory of "indirect" authority, for which it offers no support whatsoever.  The specific claims, all spurious, follow:

- <u>Citizens Union's argument that the Governor assisted in drafting the legislation</u>. Citizens Union contends that the Governor is an "architect of the legislation", that he proposed it as a Governor's Program Bill, and that he issued a message of necessity upon request of the Senate and Assembly to permit expedited voting.  (Opp. at 3, 5).  Of course, this argument ignores that the Senate and Assembly introduced and voted on the legislation before the Governor signed it.  In any event, any involvement with the drafting and passage of the legislation hardly confers authority to enforce its provisions.

- <u>Citizens Union's argument that the Governor and his representatives have</u>

publicly endorsed increased disclosure by nonprofits. Pointing to a general statement by the Governor's office (issued well before the passage of the Nonprofit Disclosure Provisions) that "[w]e will be discussing many ethics issues this session, including campaign finance reform, outside income for legislators and more disclosure by not-for-profits as to who actually funds them and whether they are shadow lobbyists" (AC ¶ 33), Citizens Union claims that the Governor's representatives "have publicly stated that these laws should be enforced against Plaintiffs and similar entities." (Opp. at 6). There is nothing in the statement specific to the Nonprofit Disclosure Provisions, to good government groups, or to the Plaintiffs. Even if there were, the Governor's public commentary on legislation or pending legislation hardly confers enforcement authority on the Governor.

- Citizens Union's argument that the Governor appoints a minority of the members of JCOPE. Citizens Union also argues that the Governor "wields indirect but substantial enforcement authority through his power to appoint six of fourteen members of JCOPE," the entity responsible for publishing on its website reports made pursuant to the Nonprofit Disclosure Provisions. (Opp. at 7). But Citizens Union does not, and cannot, argue that JCOPE—or the Governor—wields and can wield authority to require nonprofit corporations to abide by the obligations imposed by the law. In fact, JCOPE is not an executive agency answerable to the Governor; to the contrary, JCOPE has the power to investigate the executive branch. In any event, Citizens Union has pointed to no authority where the *Ex Parte Young* doctrine has ever applied in such an attenuated situation.

- Citizens Union's argument that the Governor can investigate state agencies under the Moreland Act. Citizens Union contends the Governor has "broad authority" under the Moreland Act, N.Y. Exec. Law § 6, to investigate the management and affairs of JCOPE and

other state agencies. (Opp. at 7). This is entirely speculative, as there are no allegations that such a Commission has been formed here. *See Wang* v. *Pataki*, 396 F. Supp. 2d 446, 454 (S.D.N.Y. 2005) ("The Plaintiffs have suggested that the Attorney General might, at some future date, commence criminal proceedings against Plaintiffs . . . . Such allegations, which are not found in the FAC, fail because a wholly speculative threat of future prosecution is not actionable.") Moreover, the fact that the Governor can gather information does not confer on him any enforcement authority with respect to the Nonprofit Disclosure Provisions, nor has Citizens Union cited any decision where Eleventh Amendment immunity was overcome on such a basis.

- <u>Citizens Union's argument that the Governor can direct investigations by the Attorney General</u>. Citizens Union asserts that New York Executive Law empowers the Governor "'to direct the Attorney General to undertake investigations or to prosecute violations of New York law.'" (Opp. at 6 (quoting N.Y. Exec. Law § 63[3])). This is speculative as well. The Amended Complaint offers no allegations that the Governor has directed the Attorney General to do anything with respect to the Nonprofit Disclosure Provisions. Moreover, Citizens Union ignores key language in the statute: it relates to criminal investigations and prosecutions (rather than civil) and relates to areas over which, "the officer making the request [here, allegedly, the Governor] is especially required to execute or in relation to any matters connected with such department." N.Y. Exec. Law § 63[3].[1]

- <u>Citizens Union's Argument that the Governor can issue executive orders</u>.

---

[1] Citizens Union also briefly references New York Executive Law § 63 [8], which provides that the Attorney General "may, with the approval of the governor, and when directed by the governor, shall, inquire into matters concerning the public peace, public safety and public justice." N.Y. Exec. Law § 63[8]. The New York Court of Appeals has cautioned that: "we perceive recourse to this section as having been intended only when for compelling reasons reliance cannot or should not necessarily be placed on specific, individualized grants of authority from the Legislature . . . ." *Friedman* v. *Hi-Li Manor Home For Adults*, 42 N.Y.2d 408, 415 (1977). Here, the Legislature has already empowered the Attorney General to enforce the Nonprofit Disclosure Provisions. (AC ¶ 15).

Citizens Union's final argument, that the Governor "is accorded great flexibility in determining the methods of enforcement" of statutes through the use of executive orders, Opp. at 7, is similarly misplaced. The very decision that Citizens Union cites, *Rapp* v. *Carey*, 44 N.Y.2d 157 (1978), held an executive order issued by Governor Carey to be unconstitutional where the order purported to require state employees to file financial disclosures. The court cautioned that the Governor may not "'go beyond stated legislative policy and prescribe a remedial device not embraced by the policy.'" *Id*. at 163 (citation omitted). In any event, such authority, deriving from the New York Constitution, is analogous to the general duty to "take care that the laws are faithfully executed" that cannot overcome the immunity conferred by the Eleventh Amendment.

The Nonprofit Disclosure provisions were passed by the Senate and Assembly (nearly unanimously) and are enforced by the Attorney General. The Governor does not have the authority to halt their enforcement such as would be required to grant Citizens Union the relief it is seeking. In *Wang* v. *Pataki*, 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001), the court dismissed claims against a governor where the attorney general was responsible for enforcing its penalties. Judge Sweet cautioned that "where the legislative enactment provides that entities other than the executive branch of the state are responsible for implementation of the statute no claim against the Governor lies." *Id*.[2] The same is true here.

---

[2] Citizens Union also cites a series of decisions for the mundane proposition that courts frequently adjudicate cases against governors. (Opp. at 5). The cases are all inapposite to the circumstances here, however. In *Moore* v. *Ogilvie*, 394 U.S. 814 (1969), *Wells* v. *Rockefeller*, 394 U.S. 542 (1969), *Williams* v. *Rhodes*, 393 U.S. 23 (1968), and *Cooper* v. *Harris*, No. 15-1262, 2017 WL 2216930 (U.S. May 22, 2017), all cases related to election districting or balloting, no immunity argument was before the court. In *Patsy* v. *Bd. of Regents*, 457 U.S. 496, 532 n.19 (1982), the defendant state board (not a governor) had initially raised but not briefed the issue of Eleventh Amendment immunity. The court noted that "because of the importance of state law in analyzing Eleventh Amendment questions and because the State may, under certain circumstances, waive this defense, we have never held that it is jurisdictional in the sense that it must be raised and decided by this Court on its own motion. *Id*. Finally, *Ass'n of American Medical Colleges* v. *Cuomo*, 928 F.2d 519, 521 (2d Cir. 1991) is a further decision in the *Carey* case which has been renounced by *Warden* v. *Pataki* and its progeny as discussed above.

## II. THE DOCTRINE OF LEGISLATIVE IMMUNITY BARS CLAIMS RELATED TO THE "PASSAGE" OF THE LEGISLATION

In its opposition, Citizens Union clarifies that its injuries arise only from the "enforcement of the statutes, not their passage." (Opp. at 9 ("the acts giving rise to Citizens Union's constitutional injury—suppression of its First Amendment rights—would be the *enforcement* of the statutes, not their passage")). Citizens Union thus appears to have abandoned its claims against the Governor related to his activities in drafting and promoting the Nonprofit Disclosure Provisions (AC ¶¶ 38-40, 43, 52, 169-173), the only activities the Governor is alleged to have engaged in. If that is in fact Citizens Union's current position, the Court would not need to address the Governor's demonstration that the claims against him must be dismissed under the doctrine of legislative immunity. In other words, if Citizen's Union is no longer pursuing its claims about the passage of the statutes, but is only concerned about the enforcement of them, it has no claim against the Governor and the action should be dismissed against him anyway.

To the extent Citizens Union is nonetheless maintaining claims relating to the passage of the Nonprofit Disclosure Provisions, however, the fact that it is seeking declaratory and injunctive relief only does not render the Governor a proper party to the suit. (*See* Opp. at 9 (citing *State Emps. Bargaining Agent Coal*. v. *Rowland*, 494 F.3d 71, 88 (2d Cir. 2007))). In *Rowland*, the court noted that "the doctrine of legislative immunity bar[s] claims 'not only . . . for damages, but also those claims for declaratory and injunctive relief' where such relief would require the amendment or repeal of the legislation at issue." *Rowland*, 494 F.3d at 83-84 (quoting *Supreme Court of Va*. v. *Consumers Union of U.S., Inc*., 446 U.S. 719, 733-34 (1980)). Citizens Union's argument that legislative immunity is inapplicable in a case seeking declaratory and injunctive relief ignores the clear directive of the Supreme Court in *Consumers Union*:

> [T]here is little doubt that if the Virginia Legislature had enacted the State Bar Code and if suit had been brought against the legislature, its committees, or

>members for refusing to amend the Code in the wake of our cases indicating that the Code in some respects would be held invalid, the defendants in that suit could successfully have sought dismissal on the grounds of absolute legislative immunity. . . . If the sole basis for appellees' § 1983 action against the Virginia Court and its chief justice were the issuance of, or failure to amend, the challenged rules, legislative immunity would foreclose suit against appellants.

*Consumers Union*, 446 U.S. at 733-34. The court concluded that immunity was not a bar to the claims at issue, however, because the "Virginia Court and its chief justice properly were held liable in their enforcement capacities." *Id*. at 736. Here, in contrast, the Governor has no enforcement authority over the Nonprofit Disclosure Provisions, as discussed above, to which his only ties are those carried out "in the sphere of legitimate legislative activity." *Id*. at 732 (citations and internal quotation marks omitted). He should therefore "be protected not only from the consequences of litigation's results but also from the burden of defending [himself]." *Id*. (citation and internal quotation marks omitted).

## CONCLUSION

It is now plain that Citizens Union has aggressively pursued its claims against the Governor in this case notwithstanding that, as its own letter to the Court of April 25, 2017 [Dkt. 76] and the plethora of cases presented to this Court on this motion demonstrate, there is absolutely no basis for any such claim. All claims against the Governor should be dismissed in their entirety with prejudice.

Dated: New York, New York
June 12, 2017

      /s/ Floyd Abrams
**CAHILL GORDON & REINDEL LLP**
Floyd Abrams
Susan Buckley
Tammy Roy
80 Pine Street
New York, New York 10005
(212) 701-3000
fabrams@cahill.com
sbuckley@cahill.com
troy@cahill.com

*Attorneys for Governor Andrew Cuomo*