

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITIZENS UNION OF THE CITY OF NEW
YORK, et al.,

                              Plaintiffs,

            -against-

THE ATTORNEY GENERAL OF THE STATE
OF NEW YORK, et al.,

                              Defendants.

16 Civ. 9592 (RMB)(KHP)

**DECISION & ORDER**

**I.      Background**

This Decision & Order resolves the May 15, 2017 motion of Defendant Andrew M.

Cuomo, in his official capacity as Governor of the State of New York, to dismiss the amended

complaint as to him, filed February 28, 2017 ("Amended Complaint"), of Citizens Union of the

City of New York and Citizens Union Foundation, Inc. of the City of New York (collectively,

"Plaintiffs"). Plaintiffs seek, among other things, to enjoin the Governor from "enforc[ing] or

implement[ing]" Sections 172-e and 172-f of New York Executive Law (so-called "Nonprofit

Disclosure Provisions"). (Am. Compl. at 45.)[1]

The New York State Assembly and Senate passed the Nonprofit Disclosure Provisions on

June 17, 2016. (Am. Compl. ¶ 48.) And, although the New York Constitution normally requires

---

[1] The Nonprofit Disclosure Provisions impose biannual reporting obligations on so-called
(i) 501(c)(3) organizations that donate more than $2,500 to certain 501(c)(4) lobbying
organizations and (ii) 501(c)(4) organizations that expend more than $10,000 per year
"refer[ring] to and advocat[ing] for or against a clearly identified elected official or the position
of any elected official or administrative or legislative body relating to . . . the substance of any . .
. decision by any legislative, executive or administrative body" to a "general public audience" of
at least 500 people. N.Y. Exec. Law §§ 172-e to 172-f. "**[T]he Attorney General is charged
with the administration and enforcement of the Nonprofit Disclosure Provisions**." (Am.
Compl. ¶ 15 (emphasis added).)

that legislation be "printed and upon the desks of the members, in its final form, at least three calendar legislative days prior to its final passage," the Assembly Speaker's Legislative Counsel requested – and Governor Cuomo issued – a "message of necessity" on June 17, 2016 to "certify to the necessity of the immediate vote" without the three day advance publication. N.Y. Const. art. III, § 14; (Letter from E. Joshua Rosenkranz to Hon. Katharine H. Parker, dated May 30, 2017, Ex. 1 ("Message of Necessity")). Governor Cuomo signed the Nonprofit Disclosure Provisions into law on August 24, 2016. (Am. Compl. ¶ 52.) Plaintiffs allege that the Governor made statements in support of the Nonprofit Disclosure Provisions, issued the Message of Necessity, and signed the legislation "to retaliate against good government groups like Plaintiffs for criticizing his ethics reform efforts." (See id. ¶¶ 4, 31-34, 87, 97, 120, 131.)

Plaintiffs are 501(c)(4) and 501(c)(3) membership organizations, respectively. They "promote informed public discourse on matters of public concern in New York State and New York City." (Id. ¶ 1.) On December 12, 2016, Plaintiffs filed a Complaint in this Court, naming the Governor, in his official capacity, as one of four defendants. (Compl., filed Dec. 12, 2016, ¶ 13.) [2]

On December 28, 2016, the Court issued an Order (agreed to by the parties) that the defendant Attorney General "shall not take any action to enforce, or direct the enforcement of, the Nonprofit Disclosure Provisions in any respect" during the pendency of Plaintiff's preliminary injunction application in these proceedings. (Stipulation and Order, dated Dec. 28, 2016, at 2.)

---

[2] The other three defendants are the members of the Joint Commission on Public Ethics ("JCOPE"), in their official capacities, the Executive Director of JCOPE, in his official capacity, and the Attorney General, in his official capacity.

2

Plaintiffs filed the Amended Complaint against all of the defendants named in the initial
Complaint on February 28, 2017. (Am. Compl. ¶¶ 14-18.) Both complaints allege, among other
things, that the reporting requirements of Sections 172-e and 172-f are "overbroad" under the
First and Fourteenth Amendments of the United States Constitution. (Compl. at 41-44; Am.
Compl. at 41-44.)

Similar complaints relating to the passage of the Nonprofit Disclosure Provisions were
filed by the American Civil Liberties Union Foundation, Inc. ("ACLU Foundation"), et al. and
Lawyers Alliance for New York ("Lawyer Alliance"), et al.. (ACLU Foundation Compl., filed
Dec. 21, 2016, ¶¶ 78, 80 ("New York Executive Law §172-e violates the First and Fourteenth
Amendments" and "New York Executive Law §172-f violates the First and Fourteenth
Amendments"); Lawyers Alliance Compl., filed Mar. 6, 2017, ¶ 58 ("New York Executive Law
§172-e violates the First and Fourteenth Amendments")). Neither of these two other complaints
named the Governor as a defendant. On March 16, 2017, the Court ordered that the three cases
be consolidated because they "involve ... common question[s] of law or fact," see Fed. R. Civ.
P. 42(a)(2), including "whether New York Executive Law Section 172-e violates the First and
Fourteenth Amendments of the United States Constitution." (Order, dated Mar. 16, 2017, at 2.)

The Governor moved to dismiss all claims asserted against him by the Plaintiffs in his
official capacity and to remove his name from the caption of 16 Civ. 9592, pursuant to Fed R.
Civ. P. 12(b)(1) and 12(b)(6). (Def.'s Mot. to Dismiss, dated May 15, 2017 ("Def. Mot."), at 1.)
The Governor argues that (1) Plaintiffs' claims against him should be dismissed because the
Eleventh Amendment bars claims against the Governor in his official capacity (Def.'s Mem. of

Law in Supp. of Its Mot. to Dismiss, dated May 5, 2017 ("Def. Mem."), at 6); and (2) Plaintiffs'
claims against him are barred also under the doctrine of legislative immunity (id. at 9).[3]

On June 5, 2017, Plaintiffs submitted an opposition brief arguing, among other things,
that (1) the Governor is not entitled to executive immunity because he had "some connection
with the enforcement of the act" within the meaning of Ex Parte Young, 209 U.S. 123, 157
(1908) (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, dated June 5, 2017 ("Opp'n"), at
3); and (2) the Governor is barred from asserting legislative immunity because his actions were
not in the course of his "legislative capacit[y]" nor would the "particular relief sought … enjoin
defendant[] in [his] legislative capacit[y]." (Opp'n at 8.)

On June 12, 2017, Governor Cuomo submitted his reply. (Reply, dated June 12, 2017
("Reply").)

## II.    Legal Standard

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the Court must
first consider subject matter jurisdiction as it is the "threshold question that must be resolved . . .
before proceeding to the merits." United States v. Bond, 762 F.3d 255, 263 (2d Cir. 2014)
(quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88–89 (1998)). "The standards of
review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and
under 12(b)(6) for failure to state a claim are substantively identical." McCray v. Lee, 2017 WL
2275024, at *2 (S.D.N.Y. May 24, 2017).

---

[3] On May 30, 2017, the Governor contested Plaintiffs' discovery requests. (Letter from
Floyd Abrams to Hon. Katharine H. Parker, dated May 30, 2017.) "Citizens Union has not
demonstrated that the documents reflected on the Governor's privilege log are relevant to a
constitutional inquiry or probative of the current government interest in the Nonprofit Disclosure
Provisions." (Id. at 9.) Magistrate Judge Parker's ruling on the Governor's discovery objections
is sub judice.

"Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction" which "is not to be sacrificed to elementary mechanics of captions and pleading." Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 270 (1997). "For over a century," the Supreme Court "ha[s] understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition [of state sovereign immunity] . . . which it confirms." Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996).

"Sovereign immunity bars suit against a state official sued in his official capacity, unless Congress has abrogated that immunity or the state has consented to suit." Steinberg v. Elkman, 666 F. App'x 26, 27 (2d Cir. 2016). It is "well settled that the ambit of the Eleventh Amendment's immunity includes a governor, in his official capacity." Steinberg v. Elkman, 2016 WL 796870, at *3 (S.D.N.Y. Feb. 22, 2016) (quoting Nunez v. Cuomo, 2012 WL 3241260, at *20 (E.D.N.Y. Aug. 7, 2012)), aff'd, 666 F. App'x 26 (2d Cir. 2016).

## III. Analysis

### (1) Governor Cuomo Has Executive Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." Seminole Tribe, 517 U.S. at 54; see also id. ("'[I]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" (quoting The Federalist No. 81, at 487 (Alexander Hamilton) (Clinton Rossiter ed., 1961))).

A state's sovereign immunity "extend[s] beyond the terms of the [Eleventh

Amendment's] text," and applies to lawsuits brought by a state's own citizens. Kelly v. N.Y.

Civ. Serv. Comm'n, 632 F. App'x 17, 18 (2d Cir. 2016). Plaintiffs' claims here against the

Governor, acting in his official capacity, are barred by Eleventh Amendment immunity. See, e.g.,

Steinberg, 666 F. App'x at 28 (affirming dismissal of claims brought against governor in official

capacity on Eleventh Amendment grounds); Kelly, 632 F. App'x at 18; W. Mohegan Tribe &

Nation v. Orange Cnty., 395 F.3d 18, 23 (2d Cir. 2004). "In an official-capacity claim, the relief

sought is only nominally against the official and in fact is against the official's office and thus

the sovereign itself." Lewis v. Clarke, 137 S. Ct. 1285, 1292 (2017). Thus, "it is well settled that

the ambit of the Eleventh Amendment's immunity includes a governor, in his official capacity."

Steinberg, 2016 WL 796870, at *3.

### (2) Ex Parte Young

There is a limited exception to the rule that governors and other state officials cannot be

sued in their official capacities. See Ex Parte Young, 209 U.S. at 123. So, for example, "suits

against state officers acting in their official capacities that seek prospective injunctive relief to

prevent a continuing violation of federal law are authorized under Ex Parte Young . . . ." Kelly,

632 F. App'x at 18. Under this exception, "the officer is simply prohibited from doing an act

which he had no legal right to do." Ex Parte Young, 209 U.S. at 159. "However, to avoid the

Eleventh Amendment bar, the state officer against whom prospective relief is sought 'must have

some connection with the enforcement of the act'" that includes "both a **particular duty to**

**enforce the statute in question** and a demonstrated willingness to exercise that duty." Kelly,

2015 WL 861744, at *3 (quoting Ex Parte Young, 209 U.S. at 15[7]) (emphasis added); accord

281 Care Comm. v. Arneson, 766 F.3d 774, 797 (8th Cir. 2014); Morris v. Livingston, 739 F.3d

6

740, 746 (5th Cir. 2014); Chamber of Commerce of U.S. v. Edmondson, 594 F.3d 742, 760 (10th Cir. 2010); see also CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs., 306 F.3d 87, 99 (2d Cir. 2002) (amenability to suit under Eleventh Amendment requires "both the power and the duty" to take challenged action). This is not our case.

Here, it is the New York Attorney General – not the Governor – who has the power and duty to enforce the Nonprofit Disclosure Provisions. The Attorney General of the State of New York, as head of the State Law Department, is responsible for "promulgat[ing] any regulations necessary to implement" the Nonprofit Disclosure Provisions and "forward[ing] the disclosure reports" to JCOPE for online publication. N.Y. Exec. Law §§ 172-e(3), 172-f(3). The Attorney General is also authorized to grant exemptions from public disclosure when "such disclosure may cause harm, threats, harassment, or reprisals to the source of the donation or to individuals or property affiliated with the source of the donation." Id. And, the Attorney General is empowered to enforce the Nonprofit Disclosure Provisions by, inter alia, issuing cease and desist orders; assessing civil penalties of up to $1,000 per violation; and revoking, suspending, or denying a violator's registration. See id. §§ 175, 177.[4]

The Governor does not have the requisite enforcement duty and power with respect to the Nonprofit Disclosure Provisions to implicate the "limited exception" of Ex Parte Young, W. Mohegan Tribe & Nation, 395 F.3d at 21, which must be "tailored . . . as precisely as possible . . . to vindicate federal rights," Coeur d'Alene Tribe, 521 U.S. at 277. While Plaintiffs point to the Governor's general duty to "take care that the laws are faithfully executed," presumably including the Nonprofit Disclosure Provisions, N.Y. Const. art. IV, § 3; (Opp'n at 4), it has been held that "a state official's duty to execute the laws is not enough by itself to make that official a

---

[4] In fact, the Attorney General agreed to a stay of enforcement of the Nonprofit Disclosure Provisions, referred to on page 2 above.

7

proper party in a suit challenging a state statute." Nolan v. Cuomo, 2013 WL 168674, at *9

(E.D.N.Y. Jan. 16, 2013) (quoting Warden v. Pataki, 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999),

aff'd sub nom. Chan v. Pataki, 201 F.3d 430 (2d Cir. 1999)); see also United States v. New

York, 2007 WL 951576, at *3 (N.D.N.Y. Mar. 27, 2007) (where the Governor "ha[d] no legal

obligation or authority to implement or enforce" the statute); N.Y. State Motor Truck Ass'n v.

Pataki, 2004 WL 2937803, at *12 (S.D.N.Y. Dec. 17, 2004) (where the Governor did not have

"primary responsibility for the enforcement of the statute" or "an affirmative role in its

enforcement"); Wang v. Pataki, 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001) (where plaintiff failed

to show that "the Governor ha[d] any connection with the enforcement of the [statute] other than

the general duty to take care that the laws be faithfully executed").[5]

     Nor do discretionary powers conferred by Sections 63(3) and 63(8) of New York

Executive Law "empower[] the Governor to act in furtherance of the enforcement" of the

Nonprofit Disclosure Provisions. (Opp'n at 6.) First, Section 63(3), which provides that the

Governor may request that the Attorney General "investigate the alleged commission of any

indictable offense or offenses in violation of the law," relates to criminal investigations. Even

assuming, arguendo, Section 63(3) were implicated, the New York Attorney General "really

[hasn't] moved forward on the process of promulgating [Nonprofit Disclosure Provision] rules,"

which, of course, is a necessary predicate for the commission of an offense. (Hr'g Tr., dated Mar.

16, 2017, at 12). Second, Section 63(8) was originally conceived as a wartime "emergency"

provision. Friedman v. Hi-Li Manor Home For Adults, 366 N.E.2d 1322, 1325 (N.Y. 1977).

Subsequent reliance upon this section has required "the existence of such an activating

---

[5] Plaintiffs' reliance on Ass'n of Am. Med. Colleges v. Carey, 482 F. Supp. 1358 (N.D.N.Y. 1980) (Reply at 4-5) fails to take into account that subsequent decisions from courts in this Circuit have declined to follow Carey, some going as far to say it "has been soundly rejected." United States v. New York, 2007 WL 951576, at *2.

prerequisite," such as "a war emergency" or "some demonstration of urgent . . . circumstances." Landau v. Hynes, 400 N.E.2d 321, 327 (N.Y. 1979). None exists here.[6]

Because the Court does not have subject matter jurisdiction to consider claims brought against the Governor in his official capacity, as described above, the Court need not consider the Governor's other grounds for dismissal such as legislative immunity. See Steinberg, 2016 WL 796870, at *5.

## IV.    Conclusion & Order

For the forgoing reasons, the motion to dismiss Governor Cuomo as a party in this case [#82] is granted and the Court respectfully requests that the Clerk remove the Governor's name from the case caption.

Dated: New York, New York
       June 23, 2017

**RICHARD M. BERMAN, U.S.D.J.**

---

[6] Nor do Plaintiffs' remaining arguments regarding the Governor's general, discretionary powers support an Ex Parte Young limited exception, including the Governor's "flexibility" in promulgating executive orders, his "indirect . . . enforcement authority" of appointing members to JCOPE, and his "broad authority" to investigate state agencies. (Opp'n. at 7.) These arguments do not amount to a "particular duty" to enforce the Nonprofit Disclosure Provisions, Kelly, 2015 WL 861744, at *3, regardless of whether they "arise out of the general law" or are "specially created by the act itself." Digital Recognition Network, Inc. v. Hutchinson, 803 F.3d 952, 960, 964 (8th Cir. 2015); see also Kuck v. Danaher, 822 F. Supp. 2d 109, 142–43 (D. Conn. 2011).