

JOHN J. GIBBONS FELLOWSHIP IN
PUBLIC INTEREST & CONSTITUTIONAL LAW

HONORABLE JOHN J. GIBBONS

LAWRENCE S. LUSTBERG
DIRECTOR

AVI FREY
J. DAVID POLLOCK
FARBOD FARAJI

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Phone: 973.596.4500

February 23, 2018

**VIA ECF AND U.S. MAIL**
Honorable Richard M. Berman
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re: *Citizens Union, et al. v. The Attorney General of the State of New York, et al.*
         **Case No. 1:16-cv-09592-RMB**
         *Lawyers Alliance for New York et al. v. Schneiderman*
         **Case No. 1:17-cv-01655-RMB**

Dear Judge Berman:

    I write on behalf of Plaintiffs Lawyers Alliance for New York and Nonprofit Coordinating Committee of New York (the "Lawyers Alliance Plaintiffs") in response to the Court's Order of February 17, 2018 directing the parties to make brief written submissions concerning the applicability to this case of the Second Circuit's decision in *Citizens United v. Schneiderman*, No. 16-cv-3310, 2018 WL 891276 (2d Cir. Feb. 15, 2018). *See* 16-cv-09592-RMB, ECF No. 128.

    As the Lawyers Alliance Plaintiffs explained in their letter of October 17, 2017, *see* ECF No. 121, the Court's holding in *Citizens United* does not dictate and, after full consideration, provides no support for the Attorney General's position in this case because of critical differences in the statutory provisions at issue. Most importantly, the *Citizens United* decision concerned a provision that has a *nonpublic* disclosure requirement: any charity seeking to solicit funds in New York must annually submit to the Attorney General a copy of its IRS Form 990,

GIBBONS P.C.

February 23, 2018
Page 2

including the Schedule B identifying the charity's major donors, which Schedule remains confidential. 2018 WL 891276, at *2. Several other states require the submission of the same information, and likewise maintain its confidentiality. *See Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1310 n.1 (9th Cir. 2015). Indeed, the confidential nature of the required disclosure in *Citizens United* was central to the Second Circuit's decision upholding the constitutionality of that provision. *See* 2018 WL 891276, at *6 (noting that it would "raise the stakes" if donor lists were publicized); *id.* ("[A]pplicable law prevents the Attorney General from publicizing lists of donors.").

The provision at issue in this case, Executive Law § 172-e, by contrast, purports to regulate lobbying activity by disclosing donor identities on a *public* website. It requires a 501(c)(3) organization to report to the Attorney General whenever it donates funds or in-kind services worth at least $2,500 within a six month period to a 501(c)(4) organization that engages in substantial lobbying activity in New York State. The website then identifies any person or organization donating $2,500 or more to the 501(c)(3). The compelled public disclosure of donor's identities and the amount they have donated thus imposes a far more onerous burden on 501(c)(3) organizations and their donors than does the confidential disclosure present in *Citizens United*. Indeed, although it was dicta because the issue was not before it, the Second Circuit acknowledged that public disclosure of donor identities, like Executive Law § 172-e, would present a "more difficult question" than the statute there at issue because "when information

GIBBONS P.C.

February 23, 2018
Page 3

about one's donation to a group is available to the public, it is more plausible that people who are opposed to the mission of that group might make a donor suffer for having given to it." *Id.*[1]

Nor does the statute at issue here bear the same close relationship to the government's interests as did the confidential disclosure requirement in *Citizens United*. The Second Circuit held that the confidential disclosure to the Attorney General in *Citizens United* was "substantially related to the important interest in keeping non-profit organizations honest." 2018 WL 891276, at *4. No similarly substantial relationship exists here. Executive Law § 172-e, as noted above, purports to regulate lobbying activity but requires 501(c)(3) organizations to disclose donor identities on a public website irrespective of whether the donations at issue were earmarked for or were in fact used for lobbying activity. Executive Law § 172-e thus requires the public disclosure of the identity of donors whose contributions had absolutely nothing to do with lobbying, a requirement which is without precedent in any other state.

That is not to deny the existence of any parallels between the two cases.[2] At bottom, the Second Circuit's decision in *Citizens United* is an example of the application of "exacting

---

[1] To be sure, the Second Circuit also stated that "[p]ublication of member or donor lists is not *per se* impermissible" because it "would still require reason to believe that circumstances are sufficiently hostile that the likely chilling of speech would outweigh the government's interest in disclosures." 2018 WL 891276, at *6 & n.3. That statement must be taken in context, however. Having held, in the preceding paragraph, that there were "important government interests at stake" and that the regulations at issue "clearly further[ed]" those interests, *id.* at *6, it is evident that the Second Circuit was merely clarifying – because of the significant governmental interests at stake – that the fact of disclosure to the public would not end the inquiry in the circumstances of that case. The Lawyers Alliance Plaintiffs, in any event, do not argue that a public disclosure requirement is *per se* impermissible, but rather that Executive Law § 172-e "burdens First Amendment protected activity far in excess of any legitimate governmental interest." Compl. ¶ 61.

[2] To be clear, the parallels between *Citizens United* and this case are limited to the Second Circuit's consideration of whether the regulations at issue impermissibly chilled speech. *See* 2018 WL 891276, at *3-7. The Lawyers Alliance Plaintiffs do not challenge Executive Law § 172-e as a prior restraint on speech, nor do they bring claims that resemble the due process, preemption or *ultra vires* claims that were rejected in *Citizens United*. *Id.* at *7-10.

GIBBONS P.C.

February 23, 2018
Page 4

scrutiny," which has been applied most often to disclosure requirements related to political speech and elections. *E.g.*, *Buckley v. Valeo*, 424 U.S. 1, 64 (1976). By applying that test in the context of a disclosure law pertaining to charities and their donors, *Citizens United* clarifies that the same standard will govern here. 2018 WL 891276, at *4 (exacting scrutiny "requires a 'substantial relation between the disclosure requirement and a sufficiently important governmental interest'"); *see also Vt. Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 132 (2d Cir. 2014) (applying exacting scrutiny to disclosure of political action committee donations); *Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 10 (D.C. Cir. 2009) (applying exacting scrutiny to compelled disclosure of lobbyists' donors). However, because Executive Law § 172-e, as explained above, imposes a far more onerous burden on charities while maintaining a much more tenuous connection to the governmental interests it allegedly furthers, the Second Circuit's holding does not bear upon the outcome here.

Indeed, it is in light of those factual distinctions that the Court should view the Second Circuit's observation, again in dicta, that "an as-applied challenge will generally be the more proper way to call into question disclosure regulations." 2018 WL 891276, at *6 n.3. As the Lawyers Alliance Plaintiffs will demonstrate in forthcoming motion practice, there is no lobbying-related government interest in requiring the public disclosure of contributions to a 501(c)(3) organization where those contributions are not passed on to a 501(c)(4) to support lobbying. As a result, "a substantial number of [Executive Law § 172-e's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008). But *Citizens United* does

GIBBONS P.C.

February 23, 2018
Page 5

not address, much less decide, this issue. Nor does it undermine the cases in which courts weighing facial challenges to disclosure requirements have required that such disclosure requirements were tailored to reach only those contributions as to which disclosure would serve the stated governmental interests. *See, e.g.*, *Vt. Right to Life*, 758 F.3d at 137 (holding that the "disclosure regime is substantially related to the recognized governmental interest" because it requires disclosure only of "transactions that have the purpose of supporting or opposing a candidate"); *Nat'l Org. for Marriage, Inc. v. McKee*, 649 F.3d 34, 58 (1st Cir. 2011) (holding that disclosure law was "well tailored to Maine's informational interest" because it required PAC to disclose identifying information only of contributors whose donation was made with the purpose of supporting a candidate or campaign).

The Lawyers Alliance Plaintiffs will, of course, address these issues in far greater detail in the course of briefing the merits of this matter, the schedule for which, as the Court knows, is the subject of ongoing negotiations among the parties. In that regard, we hope to have a proposed schedule for the Court's consideration in the coming days. Thank you for your kind consideration and please do not hesitate to contact us if you have any questions or concerns.

        Respectfully submitted,

        /s/ J. David Pollock
        J. David Pollock