**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Randy M. Mastro
Direct: +1 212.351.3825
Fax: +1 212.351.5219
RMastro@gibsondunn.com

February 23, 2018

VIA ECF

The Honorable Richard M. Berman
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Citizens Union v. Attorney General of N.Y.*, No. 16-CV-9592 (RMB) (KHP) (S.D.N.Y.)

Dear Judge Berman:

I write on behalf of Plaintiffs Citizens Union and Citizens Union Foundation (collectively, "Citizens Union") in response to Your Honor's February 17 order (Dkt. 128) directing the parties to address the applicability of the Second Circuit's recent decision in *Citizens United v. Schneiderman*, 16-3310-cv, to this litigation challenging New York Executive Law Sections 172-e and 172-f (the "Nonprofit Disclosure Provisions"). In short, *Citizens United* makes clear that the appropriate standard of review to apply here—to a law imposing public disclosure obligations on certain nonprofits, based on their "particular speech" and "topic[s] discussed"—is strict scrutiny (*Citizens United*, slip op. at 14 (internal quotation marks omitted)) —a bar too high for the state legislation at issue here to survive. Moreover, the distinction that the Second Circuit makes between the permissible non-public disclosures at issue in *Citizens United* and the potential chilling effect of making donor identities "available to the public" further supports Plaintiffs' position here. *Id.* at 21.

## I. The *Citizens United* Opinion

*Citizens United* concerned a state regulation requiring all 501(c)(3) and 501(c)(4) nonprofits registered in New York to submit disclosures to the New York Attorney General.

**GIBSON DUNN**

February 23, 2018
Page 2

These disclosures include a schedule ("Schedule B") that the covered entities are already required to submit to the Internal Revenue Service ("IRS"). Slip op. at 6-8. Schedule B consists of a list of the organization's donors, their addresses, and the amounts donated. *Id.* at 7. The IRS and the Attorney General are required to keep Schedules B confidential. *Id.* at 7-8. The plaintiffs objected to submitting their Schedules B to the Attorney General, and, as relevant here, brought facial and as-applied First Amendment challenges to the regulation.

The Second Circuit upheld the disclosure regulation. First, the court held that because the regulation at issue was a "[content-]neutral disclosure requirement[]," exacting scrutiny, rather than strict scrutiny, applied. *Id.* at 14-15. Next, the court determined that the regulation facially survived exacting scrutiny, which requires a "substantial relation between the disclosure requirement and a sufficiently important governmental interest." *Id.* at 15 (internal quotation marks omitted). The court held that the regulation "clearly further[s]" the government's asserted interest in "preventing fraud and self-dealing in charities" by "making it easier to police such fraud." *Id.* at 20. Balancing this interest against the potential chilling effect of disclosing donor lists to the Attorney General, but not the public, the court held that the burden on the plaintiffs was minimal and could not outweigh the government's interests. *Id.* at 20. Specifically, the court relied on the fact that covered entities are *already* required to submit Schedules B to the IRS, and disclosing that same information to the Attorney General would not increase the risk of chilling speech. *Id.*

Finally, the court declined the plaintiffs' as-applied challenge, noting that there was no well-pleaded allegation that the Attorney General would misuse the donor lists to interfere

**GIBSON DUNN**

February 23, 2018
Page 3

with the plaintiffs' First Amendment rights. *Id.* at 24. At the same time, the court made clear that "the First Amendment's shield of privacy" would render a disclosure law unconstitutional where a plaintiff pled a "likelihood of a substantial restraint upon the exercise by [its] members" of their First Amendment rights as a result of the "disclosure of [the members'] names," such as when disclosure "will subject them to threats, harassment, or reprisals" from the government "or private parties." *Id*. at 18 (internal quotations marks omitted).

The court thus emphasized that it "would be dealing with a more difficult question if these disclosures went beyond the officials in the Attorney General's office," as the publication of donor lists "would raise the stakes" with respect to the risk of chilling speech. *Id.* at 20-21. This is because "when information about one's donation to a group is available to the public, it is more plausible that people who are opposed to the mission of that group might make a donor suffer for having given to it." *Id*. at 21.

II.     **Application to the Present Case**

*Citizens United* highlights the significant differences between the regulation at issue there and the Nonprofit Disclosure Provisions that render the latter unconstitutional.

*First*, while the Second Circuit determined that exacting scrutiny applied in *Citizens United* because the regulation at issue was content-neutral, its analysis of the level of scrutiny makes clear that strict scrutiny applies here. *Citizens United* held that, although disclosure requirements are "not inherently content-based," strict scrutiny will apply where a law "applies to particular speech because of the topic discussed" or "cannot be justified without reference to the content of the regulated speech." *Id.* at 14, 15 (internal quotation marks

**GIBSON DUNN**

February 23, 2018
Page 4

omitted).  The regulations at issue in *Citizens United* were content-neutral because they were generally applicable disclosure requirements covering every nonprofit registered in New York.  In contrast, the Nonprofit Disclosure Provisions specifically target 501(c)(3)s that make "in-kind donation[s]" to certain 501(c)(4)s that engage in lobbying, and 501(c)(4)s that engage in "covered communications," *i.e.*, essentially any speech pertaining to public affairs.  Am. Compl. ¶¶ 58, 65-66, 133-34.  The Nonprofit Disclosure Provisions are thus clearly content-based regulations that burden only certain "topic[s] discussed" and that specifically "reference…the content of the regulated speech."  *Citizens United*, slip op. at 14.  Strict scrutiny therefore applies, and the Nonprofit Disclosure Provisions fail that exacting standard: the Attorney General has never even attempted to justify these broad donor disclosure requirements as narrowly tailored to further a compelling governmental interest, nor could he.

*Second*, even if exacting scrutiny were to apply, the Nonprofit Disclosure Provisions would still fail, both facially and as applied to Citizens Union.  Exacting scrutiny requires a "substantial relation between the disclosure requirement and a sufficiently important governmental interest." *Id.* at 15.  The court held in *Citizens United* that the regulation "clearly further[ed]" the government's asserted interest of preventing fraud by "making it easier to police for such fraud." *Id.* at 20.  Here, the government's asserted interest is protecting against potential corruption in electoral politics.  *See, e.g.*, Am. Compl. ¶ 53.  Unlike in *Citizens United*, there is *no* relation, much less a "substantial" one, between the challenged laws and the asserted interest.  Publicly naming donors to a 501(c)(3) which, for instance, provides pro bono legal services to a 501(c)(4), has nothing to do with policing *quid pro quo* corruption,

**GIBSON DUNN**

**GIBSON DUNN**

February 23, 2018
Page 5

nor does it advance any such interest. Nor does publicly naming donors to a 501(c)(4) that, for instance, generally expresses support for veterans further at all the government's goals. Yet the Nonprofit Disclosure Provisions would cover those activities, and many more, that are entirely removed from electoral politics. They thus cannot survive exacting scrutiny.

*Finally*, *Citizens United* went out of its way to clarify that it "would be dealing with a more difficult question if," as in this case, "these disclosures went beyond the officials in the Attorney General's office." Slip. op. at 20. Specifically, when a citizen's donations to a group are made public, "it is more plausible that people who are opposed to the mission of that group might make a donor suffer for having given to it." *Id.* at 21. As Citizens Union has pleaded, its members will face such hostility should its donor lists become public. Am. Compl. ¶¶ 85-88, 95-98. Thus, in this case, even if there is a substantial relationship between the Nonprofit Disclosure Provisions and an important government interest "the likely chilling of speech would outweigh the government's interest in disclosures." Slip op. at 21 n.3.

In sum, *Citizens United* offers clarity on the proper legal standard to apply here—strict scrutiny—and throws into stark relief the circuit's concern with the chilling effect of publicly disclosing the identities of nonprofit donors. The laws at issue here are not substantially related to the government's asserted interests, and will impose a significant and unjustified burden on nonprofits by chilling their speech and that of their supporters.

Respectfully,

*/s/ Randy M. Mastro*

Randy M. Mastro