**Patterson Belknap Webb & Tyler LLP**

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

February 23, 2018

William F. Cavanaugh
Partner
(212) 336-2793
wfcavanaugh@pbwt.com

**By Hand and ECF**

The Honorable Richard M. Berman
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

                Re:    *Citizens Union of the City of New York, et al. v. The Attorney General of the State of New York*, **No. 16-cv-09592-RMB**

Dear Judge Berman:

      We write on behalf of Plaintiffs American Civil Liberties Union Foundation, New York Civil Liberties Union Foundation, and New York Civil Liberties Union ("ACLU Plaintiffs") in response to the Court's February 17, 2018 Order requesting briefing on the applicability (if any) of the Second Circuit's decision in *Citizens United v. Schneiderman*, No. 16-3310-cv, slip op. (2d Cir. Feb. 15, 2018) ("*Citizens United*"). *Citizens United* addressed the constitutionality of a state regulation requiring nonprofits to provide to the New York Attorney General—on a confidential basis—certain donor information that is already included in their IRS tax filings. The decision has very limited applicability to the ACLU Plaintiffs' challenge to New York Executive Law sections 172-e and 172-f because it addressed a disclosure regime that requires that donor information be kept confidential. The Second Circuit confirmed that the constitutionality of such a disclosure provision would be "a more difficult question" if donor names were made public—as they are in the two statutes challenged by the ACLU Plaintiffs here.

10245850

Hon. Richard M. Berman
February 23, 2018
Page 2

In *Citizens United*, plaintiffs challenged a state regulation requiring nonprofits to include with their annual disclosures to the New York Attorney General a copy of the organization's IRS Form 990 and all of its schedules.[1]  *Citizens United*, slip op. at 6-7.  Plaintiffs objected only to the requirement to turn over Schedule B to Form 990, which includes donors' names and addresses.  *Id.* at 7.[2]  Recognizing the First Amendment interest in maintaining the anonymity of donors, both IRS rules and New York state regulations require that Schedule Bs be kept confidential and prohibit any public disclosure.  *Id.*  Applying exacting scrutiny, which requires a "substantial relation between the disclosure requirement and a sufficiently important government interest," *id.* at 15, the Court held that allowing the Attorney General to collect—and hold in confidence—copies of nonprofits' Schedule Bs did not violate the First Amendment.  The Court first held that the regulation's purpose—preventing fraud and self-dealing by giving the Attorney General a "complete picture of [the] charities' operations"—is an important state interest.  *Id.* at *16.  Next, the Court concluded that the burden on First Amendment rights was minimal because the confidentiality requirements meant that there would be no material chilling effect on potential donors.  *Id.* at 20.  Key to that holding was the fact that the regulation just required disclosure to state officials of tax documents already filed with the IRS.  *Id.*  Moreover, the Attorney General is prohibited from disclosing the donor information contained in the

---

[1] Form 990, officially titled, "Return of Organization Exempt From Income Tax," is the income tax return filed by a tax-exempt organization.  See https://www.irs.gov/forms-pubs/about-form-990.  Form 990s, exclusive of schedules, are widely available from public sources.

[2] In general, 501(c)(3) and (c)(4) organizations must disclose on Schedule B information regarding donors that contribute over $5,000.  *See* Form 990 Schedule B, https://www.irs.gov/pub/irs-pdf/f990ezb.pdf.  501(c)(3) organizations that receive more than one-third of their support from public sources must disclose information regarding donors that contribute the greater of $5,000 or 2% of total annual contributions.  *See id.*; 26 U.S.C. § 509(a).

Hon. Richard M. Berman
February 23, 2018
Page 3

Schedule B.  *Id.*  As noted above, the Court made clear that public disclosure of donor information would pose "a more difficult question." *Id.* at 20.  The Court also dismissed an "as-applied" challenge to the regulation because Citizens United failed to plausibly allege that its Schedule B would be publicly released or that its donors would be deterred from supporting the organization.  *Id.* at 23-24.

In this case, the ACLU Plaintiffs challenge New York Executive Law sections 172-e and 172-f, which impose a substantially higher burden on speech and fail to serve an important and overriding government interest.[3]  Unlike the regulation at issue in *Citizens United*, sections 172-e and 172-f *require* that all donor information be published on a state-maintained public website.  N.Y. Exec. Law §§ 172-e(3), 172-f(3).  Moreover, under the new laws donor names are published even if their donations have not been earmarked toward a contribution to a 501(c)(4) that engages in lobbying activity (in the case of 172-e) or toward "covered communications" (in the case of 172-f); indeed, publication is required even of donations that are specifically earmarked *not* to be directed to those activities.  The laws thus require public disclosure of donors who have no knowledge or intent to participate in the speech the state seeks to regulate.  As the Second Circuit recognized, public disclosure forecloses the right of donors to speak

---

[3] Section 172-e requires public disclosure of all donors that give over $2,500 to a 501(c)(3) nonprofit if the nonprofit makes a broadly defined "in-kind donation" to a 501(c)(4) nonprofit that engages in lobbying activity.  *See* N.Y. Exec. Law § 172-e(2).

Section 172-f requires public donor and expenditure disclosures by 501(c)(4)s that spend more than $10,000 in a calendar year on "covered communications," defined as any communication sent to over 500 people that "refers to and advocates for or against a clearly identified elected official or the position of any elected official or administrative or legislative body relating to the outcome of any vote or substance of any legislation, potential legislation, pending legislation, rule, regulation, hearing, or decision by any legislative, executive, or administrative body."  *See* N.Y. Exec. Law. § 172-f(1)(b).  The nonprofit must disclose all donors that give over $1,000 and a detailed description of each "covered communication" expenditure.  *See id.* § 172-f(2).

Hon. Richard M. Berman
February 23, 2018
Page 4

anonymously.  *See Citizens United*, slip op. at 12-13 (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958)).  And it "raise[s] the stakes" because "when information about one's donation to a group is available to the public, it is more plausible that people who are opposed to the mission of that group might make a donor suffer for having given to it."  *Id.* at 21.

In addition to imposing substantial burdens on the right to anonymous speech, sections 172-e and 172-f impose a significantly greater administrative burden on nonprofits than the Form 990 disclosure at issue in *Citizens United*, which simply requires filing with the Attorney General the same set of documents a nonprofit already files with the IRS.  Sections 172-e and 172-f, by contrast, impose entirely novel, time-consuming and expensive disclosure requirements.  They sweep in more donor information than the Form 990 because the donation thresholds—$2,500 for Section 172-e and $1,000 for Section 172-f—are lower than those required on Schedule B.  And, in the case of Section 172-f, they require an entirely new system to track expenditures on vaguely defined "covered communications."

Moreover, in contrast to the *Citizens United* plaintiffs, who did not provide any concrete allegations of threats to donors to support their as-applied challenge, the ACLU Plaintiffs will present evidence of threats of violence or harm to their members, employees and donors that demonstrate the clear chilling effect of the challenged provisions if enforced against the ACLU Plaintiffs.  For example, several years ago a heavily-armed man was arrested while driving to an ACLU office with the intention of killing ACLU employees.  *See* Compl. ¶¶ 67-76, Case No. 16-cv-9854, ECF No. 1 (Dec. 21, 2016).  Other episodes of threats and harassment of those associated with the ACLU Plaintiffs can be documented.

Hon. Richard M. Berman
February 23, 2018
Page 5

Sections 172-e and 172-f fail the other end of the exacting scrutiny balancing test as well because, unlike Form 990 disclosure, the Attorney General has never persuasively articulated an important government interest in support of the legislation. The laws were enacted as part of a package addressing election and campaign finance reform, yet they are drafted to sweep in speech unrelated to elections or candidates. *See* Compl. ¶¶ 18-26. For purposes of this litigation, despite the absence of legislative history addressing the purpose of the two provisions at all, the Attorney General attempted to justify them as "protecting [] citizens from solicitation fraud" and "promoting transparency for electioneering activities." Letter from A. Amer, Case No. 16-cv-9592, ECF No. 26 (Dec. 30, 2016). Setting aside the questionable relationship between "fraud prevention" and the laws at issue, *Citizens United* demonstrates that the Attorney General's purported interest in fraud prevention can be satisfied without publication of donor names. As such, the Attorney General cannot show a substantial relationship between Section 172-e and 172-f's onerous requirements and the interests he claims the laws serve.

In short, every step of the constitutional analysis in *Citizens United* would yield a different result when applied to the ACLU Plaintiffs' challenge to sections 172-e and 172-f. We look forward to providing further briefing on the unconstitutionality of sections 172-e and 172-f, and are conferring with all parties on appropriate briefing schedule for motions for a preliminary and permanent injunction.

                                                Respectfully submitted,

                                                /s/ William F. Cavanaugh_____
                                                William F. Cavanaugh

cc:     All Counsel of Record (via ECF)

10245850