UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CITIZENS UNION OF THE CITY OF NEW YORK, et al.,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**THE ATTORNEY GENERAL OF THE STATE OF NEW YORK,**<br><br>*Defendant*. | No. 16 Civ. 9592 (RMB) (KHP)<br><br>**DEFENDANT'S LOCAL CIVIL RULE 56.1 STATEMENT** |

Pursuant to Local Civil Rule 56.1, Defendant The Attorney General of the State of New York (the "Attorney General") submits this statement of material facts as to which it is contended there is no genuine issue to be tried in support of Defendant's cross-motion for summary judgment.

### A. The Attorney General's Oversight Of Charitable Organizations

1. The Attorney General, through the Charities Bureau, is responsible for the supervision of all charitable operations in New York. In general, charitable solicitation in New York is governed by Article 7-A of the New York Executive Law. *See* N.Y. Exec. Law §§ 171-A to 177. By statute, the Attorney General's oversight extends over charitable organizations that solicit funds in the State, as well as foreign charitable nonprofits that do business or hold property in New York. *See* N.Y. Exec. Law § 172(1); N.Y. Estates, Powers and Trusts Law ("EPTL") § 8-1.4(a) (3).

2. The Attorney General is empowered to pursue a wide range of remedies to address violations of the charitable registration and solicitation laws; the Attorney General may commence proceedings to enjoin unlawful conduct, seek damages and restitution, impose civil penalties and costs, and, upon notice, may cancel a charitable organization's registration. *See* N.Y. Exec. Law §§ 175, 177; N.Y. EPTL § 8-1.4(h)-(m).

3. Nonprofit organizations must apply for and be granted tax-exempt status by the United States Internal Revenue Service ("IRS"). *See generally* 26 U.S.C. § 501.

4. Depending on an organization's mission and planned activities, it may choose to organize under different provisions of the Internal Revenue Code ("IRC"). For instance, organizations qualifying as tax exempt under IRC § 501(c)(3) must generally be engaged in charitable efforts, and are generally restricted from political lobbying, whereas "social welfare organizations" organized under IRC § 501(c)(4) are permitted to be more actively involved in the political process, so long as such is not their primary activity. *See* 26 U.S.C. §§ 501(c)(3), (4).

**B. New York's Disclosure Provisions**

5. In June 2016, the Governor announced plans to advance ethics reform legislation to address the impact of *Citizens United v. Federal Election Commission,* 558 U.S. 310 (2010) *("Citizens United I"),* which struck down prohibitions on the use of corporate and union funds for independent political expenditures, *see id.* at 365. The Governor's promised provisions would be designed to "strengthen disclosure requirements and mandate that groups report the identity of anyone exerting control over them." Press Release, Remarks as Prepared: Governor Cuomo Advances Nation's Strongest Protections to Combat Citizens United (June 8, 2016) *available at* https://www.governor.ny.gov/news/remarks-prepared-governor-cuomo-advances-nations-strongest-protections-combat-citizens-united (attached as Exhibit 2 to Mastro Declaration, ECF No.147).

6. In his speech announcing the proposed legislation, the Governor stated:

> *Citizens United* ignited the equivalent of a campaign nuclear arms race. . . . [Justice Kennedy] should have known that corporations and unions can spend undisclosed 'dark money' on elections through nonprofit corporations, which are not subject to campaign finance disclosure. And what has been the upshot?
>
> 43 percent of the $35.6 million of independent spending in the 2014 Kentucky Senate race came from undisclosed sources. 31 percent of all independent spending in Colorado's 2014 Senate race came from non-disclosing groups. Dark money

2

> accounted for one-quarter of independent spending in the 2014 Alaska, Georgia, and North Carolina Senate campaigns. . . . New York State's campaign finance laws are likewise circumvented by *Citizens United* . . . . With *Citizens United* the dam burst and big, dark money flooded the political system.  Reform must start by addressing this perversion. . . .
>
> I have been discussing the issue with the legislative leaders and will also propose incorporating these standards. . . . The current disclosure requirements for independent spending groups are so weak that we can't even tell who is running these groups or where their money comes from.  We should require independent spenders to disclose the identity of their owners, directors, executives, or anyone else exerting control.

*Id.*

7. On June 17, 2016, at the request of the Govenor, the New York State Senate and New York State Assembly introduced two ethics reform bills (S08160 and A10742, respectively), accompanied by a "Message of Necessity" from the Governor.  *See* Citizens Union Amended Complaint (ECF No. 41) at ¶¶ 42-43.

8. In his memorandum accompanying the proposed legislation, the Governor explained that the "reform prevents organizations from corrupting the political process . . . . Disclosure of political relationships and funding behaviors widely recognized to be influential, but which operate in the shadows, is essential to restoring the public's faith and trust in our political process."  Governor's Program Bill 2016 Memorandum, Statement in Support, *available at* https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/GPB39ethicspackage-memo.pdf (attached as Exhibit 4 to Mastro Declaration, ECF No.147).  As the Assembly stated in its memorandum in support, "[t]his reform prevents organizations from corrupting the political process and utilizing funds that are not intended for political purposes.  Disclosure of political relationships and funding behaviors widely recognized to be influential, but which operate in the shadows, is essential to restoring the public's faith and trust in our political process."  Memorandum in Support, New York State Assembly, 2016 N.Y. Sess. Laws 1404 (Exhibit 9 to Mastro Declaration, ECF No. 147).

9. The Senate and Assembly passed the bills, and on August 24, 2016, the Governor signed the bills into law.  Press Release, Legislation Prohibits Coordination Between Candidates and Independent Expenditure Committees and Strengthens Disclosure Requirements For Political Consultants and Lobbyists, *available at* https://www.governor.ny.gov/news/governor-cuomo-signs-first-nation-legislation-combat-citizens-united.

10. The provisions of the law relevant to these actions are those that amend the New York Executive Law to include §§ 172-e and 172-f (the "Disclosure Provisions"), which, as referenced in the Governor's speech and accompanying memorandum, expand disclosure requirements for 501(c)(3) and 501(c)(4) organizations that expend significant amounts of money on lobbying or other political speech.  N.Y. Exec. Law §§ 172-e, 172-f.

11. Under §172-e, an organization exempt under 501(c)(3) is a "covered entity" falling within the new reporting requirement where it provides an in-kind donation in excess of $2,500 to an organization exempt under 501(c)(4) that engages in substantial lobbying activity requiring the 501(c)(4) to file a source of funding report with the New York State Joint Commission on Public Ethics ("JCOPE") pursuant to N.Y. Legislative Law Art. 1-a, §§ 1-h and 1-j.  N.Y. Exec. Law §172-e.1(a)-(d), 2(a).

12. The §172-e report must identify the covered entity and its managers, the entity receiving the in-kind donation, the date of the in-kind donation, and with respect to all donations received by the covered entity during the reporting period in excess of $2,500, a list of the donor names and dates associated with such donations.  *Id.* at 2(a)(i)-(vi).

13. Under §172-f, an organization exempt under 501(c)(4) is a "covered entity" falling within the new reporting requirement where it spends in the aggregate in excess of $10,000 per calendar year on communications reaching a general public audience of 500 or more that advocate for or against an elected official or the position of any elected official or administrative or legislative

4

body relating to the outcome on any existing or pending legislation, rule, regulation, hearing or decision by such body. N.Y. Exec. Law §172-f.1(a)-(d).

14. The §172-f report must identify the covered entity and its managers, contain a description of the covered communications, list the amount of, date of, and person receiving the payment for each covered communication, and provide the name and address of any individual or entity that made a donation of $1,000 or more to the covered entity and the date of such donation. *Id.* at 2(a)(i)-(v).

15. The §172-f reporting requirement is subject to a limitation for those covered entities that maintain segregated bank accounts exclusively for covered communications, in which case only information concerning donations of $1,000 or more deposited into such accounts need be disclosed. *Id.* at 2(c).

16. Under both §§ 172-e and 172-f, a covered entity may request that the Attorney General grant an exemption from the public disclosure of donor names based upon a showing that "such disclosure may cause harm, threats, harassment, or reprisals to the source of the donation or to individuals or property affiliated with the source of the donation." N.Y. Exec. Law §§ 172-e(3), 172-f(3).

17. An organization may appeal the denial of an exemption by the Attorney General to a judicial hearing officer "who is independent and not affiliated with or employed by the department of law," pending the resolution of which any public disclosure is stayed. *Id.*

**C. Plaintiffs' Lawsuits**

18. Plaintiffs, tax-exempt 501(c)(3) and 501(c)(4) organizations, commenced these separate actions seeking an order declaring the Disclosure Provisions void and permanently enjoining their enforcement by the Attorney General, the entity responsible for receiving the reports required under §§172-e and 172-f. *See* Citizens Union Amended Complaint (ECF No. 41) at 44-45;

ACLU Complaint (16-cv-9854, ECF No. 1) at 22-23; Lawyers Alliance Complaint (17-cv-1655, ECF No. 1) at 15.

19. Plaintiffs originally named other entities as defendants in addition to the Attorney General, but those other entities are no longer parties. The ACLU originally named JCOPE and its executive director as defendants, but voluntarily dismissed those parties by stipulation and order entered on January 4, 2017. *See* 16-cv-9854, ECF No. 32. Citizens Union originally named the Governor as a defendant. By decision and order entered June 23, 2017, the Court dismissed the Governor as a party defendant. *See* ECF No. 95

20. By separate "so ordered" stipulations, the Attorney General agreed to stay enforcement of the Disclosure Provisions to maintain the status quo pending the Court's decision on Plaintiffs' preliminary injunction applications (*see* ECF No. 16; 16-cv-9854, ECF No. 31; 17-cv-1655, ECF No. 16), which stay the Attorney General later agreed to extend until the Court's resolution of the pending summary judgment motions (*see* ECF No. 135 at ¶ 5).

21. Pursuant to the Court's January 11, 2017 decision and order permitting "limited expedited discovery" (ECF No. 34, at 7), Citizens Union sought discovery from the Governor as well as the New York State Assembly and Senate concerning the legislative history and enactment of the Disclosure Provisions, most of which the Court denied. *See Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 147-48, 170-72 (S.D.N.Y. 2017) (Parker, M.J.). The other Plaintiffs did not seek any discovery, and none of the Plaintiffs sought discovery from the Attorney General. *Id.*

22. Prompted by the Court's encouragement to "meet and confer (again) regarding the issues" in the case (ECF No. 34 at ¶ 4), the parties' representatives and counsel convened a meeting on February 6, 2017, as reported by counsel to the Court at the status conference held on March 16, 2017 (ECF No. 66 at 12:9-15).

23. The February 6 meet and confer did not narrow or resolve any of the disputed constitutional issues that are central to this litigation. For this reason, counsel for the Attorney General and the Plaintiffs agreed at the March 16 conference that the Court should decide the constitutional issues. *Id.* at 12:23-13:5, 14:3-4.

24. Plaintiffs note that the Attorney General represented at an earlier January 4, 2017 status conference that the regulations were in the process of being promulgated (*see* ECF No. 139 (Memorandum of Law in Support of Plaintiffs' Joint Motion for Summary Judgment) at 9, n.4). However, as Plaintiffs are well aware based on the discussion during the March 16 conference, the Attorney General put the rule-making process on hold because of Plaintiffs' position that nothing could be done to address any of their issues through that process. ECF No. 66 at 12:23-13:5.

25. On the same date as the March 16 status conference, the Court issued an order consolidating the Plaintiffs' three separate actions "for all purposes." *See* ECF No. 60.

26. Following Citizen Union's "limited expedited discovery" of the Governor and the Legislature and the Second Circuit's issuance of its decision in *Citizens United II* – pending which these actions were stayed (*see* ECF No. 123) – the Court entered a scheduling order to govern the filing of the parties' summary judgment motions now before the Court. *See* ECF No. 135.

Dated: New York, New York
       June 25, 2018

Respectfully submitted,

BARBARA D. UNDERWOOD
Attorney General of the State of New York

By: __/s/ *Andrew Amer*__
Andrew Amer, Special Litigation Counsel
James Thompson, Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-6127
andrew.amer@ag.ny.gov

*Attorneys for Defendant The Attorney General of the State of New York, in her official capacity*

7