UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**CITIZENS UNION OF THE CITY OF NEW YORK, et al.,**

                        *Plaintiffs*,

            **v.**

**THE ATTORNEY GENERAL OF THE STATE OF NEW YORK,**

                        *Defendant*.

---

No. 16 Civ. 9592 (RMB) (KHP)

**ORAL ARGUMENT REQUESTED**

<br>

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

<br><br>

BARBARA D. UNDERWOOD
Attorney General
State of New York
28 Liberty Street
New York, New York 10005

<br>

Andrew Amer
  Special Litigation Counsel
James Thompson
  Assistant Attorney General
    *of Counsel*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..............................................................................................................................1

    I.    NEW YORK'S DISCLOSURE PROVISIONS, LIKE ALL CONTENT-NEUTRAL DISCLOSURE REQUIREMENTS, ARE SUBJECT TO REVIEW UNDER THE "EXACTING SCRUTINY" STANDARD ...............................................................................................................1

    II.   *BUCKLEY* AND ITS PROGENY ARE CONTROLLING PRECEDENT ..................................2

    III.   NEW YORK'S DISCLOSURE PROVISIONS ARE SUBSTANTIALLY RELATED TO IMPORTANT GOVERNMENT INTERESTS ...............................................................................................8

    IV.   IN LIGHT OF THE EXEMPTION PROCEDURE, PLAINTIFFS CANNOT ALLEGE "SUFFICIENTLY LIKELY" HARMS NECESSARY TO SUPPORT AN AS-APPLIED FIRST AMENDMENT CHALLENGE ...........................................................................................................13

CONCLUSION ..........................................................................................................................14

i

## **TABLE OF AUTHORITIES**

### **Cases**

*Amundson v. Wis. Dep't of Health Servs.*, 721 F.3d 871 (7th Cir. 2013) ........................................................13

*Buckley v. Valeo*, 424 U.S. 1 (1976) ........................................................................................ 2, 12

*Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464 (7th Cir. 2012)..................................2, 3, 4, 9

*Citizens United v. FEC*, 558 U.S. 310 (2010)...............................................................1, 4, 10, 12

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018)................................................ 11, 14

*Comm'n on Indep. Coll's & Univ's v. N.Y. Temp. State Comm'n on Regulation of Lobbying*,
534 F. Supp. 489 (N.D.N.Y. 1982) ............................................................................................7

*Corey H. v. Bd. of Educ. of City of Chicago*, 534 F.3d 683 (7th Cir. 2008).....................................13

*David v. FEC*, 554 U.S. 724 (2008) ...........................................................................................12

*Doe v. Reed*, 561 U.S. 186 (2010) ..............................................................................................6

*Epstein v. Kemper Ins. Cos.*, 210 F. Supp. 2d 308 (S.D.N.Y. 2002) .................................................5

*FEC v. Mass. Citizens for Life, Inc.,* 479 U.S. 238 (1986).................................................................4

*Fla. League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457 (11th Cir. 1996) .....................................7

*Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990 (9th Cir. 2010) .............................................11

*Independence Inst. v. FEC*, 216 F. Supp. 3d 176 (D.D.C. 2016)............................................... 6, 11

*Iowa Right to Life Comm., Inc. v. Tooker*, 717 F.3d 576 (8th Cir. 2013) .................................... 4, 5

*McConnell v. FEC*, 540 U.S. 93 (2003) ................................................................................ 4, 5, 9

*Minn. State Ethical Practices Bd. v. Nat'l Rifle Ass'n of Am.*, 761 F.2d 509 (8th Cir. 1985).........................7

*Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864 (8th Cir. 2012) ...........................4

*NAACP v. Alabama*, 357 U.S. 449 (1958) ............................................................................ 2, 13

*Nat'l Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 33 (D.D.C. 2008)..................................................7

*Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1 (D.C. Cir. 2009) ..............................................2, 4, 7, 9

*Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) .................................. 1, 2

*Nat'l Org. for Marriage v. McKee*, 649 F.3d 34 (1st Cir. 2011) ........................................................4

*Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377 (2000) ..................................................................9

*Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015) ...............................................................11

*Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454 (S.D.N.Y. 2011) ...........................5

*United States v. Harriss*, 347 U.S. 612 (1954) ........................................................................ 2, 6

*Util. Air Regulatory Grp. v. EPA*, 134 S.Ct. 2427 (2014) ...........................................................13

*Vt. Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118 (2d Cir. 2014) ..................................... 8, 12

*Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804 (7th Cir. 2014) ..................................................4

*Worley v. Fla. Sec. of State*, 717 F.3d 1238 (11th Cir. 2013) .....................................................11

## State Statutes

N.Y. Exec. Law § 172-e ........................................................................................................ 2, 13

N.Y. Exec. Law § 172-f......................................................................................................... 2, 3

## Rules

Fed. R. Civ. P. 56 ......................................................................................................................5

Local Civil Rule 56.1.................................................................................................................5

## PRELIMINARY STATEMENT

For decades, the Supreme Court and circuit courts have upheld after-the-fact donor disclosure requirements as substantially related to the government's important interests in (i) ensuring that the public has critical information about whose speech is seeking to influence public opinion on important political issues of the day, (ii) avoiding corruption and the appearance of corruption, and (iii) gathering data necessary to enforce existing laws.  In 2016, subsequent to the Supreme Court's decision in *Citizens United v. FEC*, 558 U.S. 310 (2010), Governor Cuomo proposed, and the Legislature enacted, the Disclosure Provisions.[1]  Plaintiffs provide no reason why this Court should deviate from the Supreme Court's binding precedent upholding after-the-fact donor disclosure requirements.

Accordingly, the Court should deny Plaintiffs' motion for summary judgment, grant Defendant's cross-motion for summary judgment, and dismiss these actions in their entirety.

## ARGUMENT

### I.    New York's Disclosure Provisions, Like All Content-Neutral Disclosure Requirements, Are Subject To Review Under The "Exacting Scrutiny" Standard

For the reasons articulated in the government's opening brief, there can be no serious dispute that New York's Disclosure Provisions are content-neutral laws subject to the intermediate "exacting scrutiny" standard.  State Opening Br. at 9-11.  Plaintiffs nevertheless argue half-heartedly in a footnote that the Disclosure Provisions are subject to strict scrutiny based upon the Supreme Court's very recent decision in *National Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018).  *See* Reply Memorandum in Further Support of Plaintiffs' Joint Motion for Summary Judgement and in Opposition to Defendant's Cross-Motion for Summary Judgment, ECF No. 159

---

[1] This reply brief uses the same defined terms set forth in the State's opening brief, ECF No. 153 ("State Opening Br.").

("Pls. Reply") at 5 n.6. Plaintiffs' reliance on *Becerra* is seriously misplaced. That case involved a California law requiring clinics that primarily serve pregnant women to provide certain notices drafted by the state to their female patients; more specifically, the law required licensed clinics to provide notice that California provides free or low-cost services, including abortions, and unlicensed clinics to provide notice that the state had not licensed them to provide medical services. *Becerra*, 138 S. Ct. at 2368. Accordingly, the decision addressed a "content-based" law compelling speech and therefore subject to strict scrutiny; it had absolutely nothing to do with a donor disclosure requirement. *Id.* at 2371.

## II.   *Buckley* And Its Progeny Are Controlling Precedent

The Supreme Court and circuit court cases analyzing after-the-fact donor disclosure laws establish two fundamental precepts.

First, after-the-fact disclosure requirements impose "lesser burdens" on First Amendment interests. *National Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 10 (D.C. Cir. 2009) (citing *United States v. Harriss*, 347 U.S. 612, 626 (1954) and *Buckley v. Valeo*, 424 U.S. 1, 82 (1976)); *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 482 (7th Cir. 2012) (describing burden of disclosure requirements on First Amendment rights as "modest"). Here, the burdens imposed are even more attenuated than in most after-the-fact disclosure cases because: (i) New York's Disclosure Provisions include an exemption from public disclosure based on a showing that "such disclosure may cause harm, threats, harassment, or reprisals to the source of the donation or to individuals or property affiliated with the source of the donation" (N.Y. Exec. Law §§ 172-e(3), 172-f(3)), in conformance with the Supreme Court's holding in *NAACP v. Alabama*, 357 U.S. 449 (1958); and (ii) under § 172-f, reporting entities can elect to maintain segregated bank accounts dedicated to the purpose of funding "covered communications," which then limits the scope of their donor disclosure to those "donations deposited into such accounts" (N.Y. Exec. Law § 172-f(2)(a)(iv)). *See* State Opening Br. at 26-27.

Plaintiffs have no response to the ameliorative effect of the exemption based on *NAACP*

other than to say that there are other burdens imposed on them "beyond the risks of retaliation and

harassment." Pls. Reply at 4. That is, of course, beside the point. The government does not

contend there are zero burdens imposed by the law, but rather that whatever modest burdens exist

are more attenuated as a result of the exemption.[2] Nor do Plaintiffs offer any plausible reason why

the segregated bank account option does not lessen the burden on 501(c)(4)s. The term "Covered

Communication" provides sufficient guidance to 501(c)(4)s by using common, everyday language

similar to BCRA's definition of "public communication." State Opening Br. at 28-29. To be

"covered" under § 172-f, a communication must "refer[] to *and advocate[] for or against*" an elected

official or position of any elected official or administrative or legislative body relating to the

outcome on any legislation, rule, regulation, hearing or decision by such body.[3] N.Y. Exec. Law

§172-f.1(a)-(d) (emphasis added). There is nothing "illusory" about the ability of 501(c)(4)s to use

segregated bank accounts to minimize their reporting obligations under § 172-f. Pls. Reply at 5 n.5.

Second, after-the-fact donor disclosure requirements can serve important governmental

interests by "providing the electorate with information, deterring actual corruption and avoiding any

---

[2] Similarly, the invocation by Plaintiffs and *amici* of a tradition of anonymous giving to American charities is unavailing. To the extent that the Disclosure Provisions impact that tradition, in enacting the Disclosure Provisions the Governor and the Legislature have made the judgment that the modest burden imposed by disclosure is outweighed by the substantial interests in informing the public, deterring corruption, and ensuring fair enforcement of the law. *See Madigan*, 697 F.3d at 499 ("While there is also a respected tradition of anonymity in the advocacy of political causes in this country, that tradition does not mean voters must remain in the dark about who is speaking.").

[3] Plaintiffs' contention that a "501(c)(4)'s mere 'refer[ence] to . . . any subject of any hypothetical 'potential' legislation . . . all fall under Section 172-f" is plainly wrong. Under the definition, the communication must not only refer to an elected official or the position of an elected official or administrative or legislative body relating to the outcome of any legislation, rule, regulation, hearing or decision by such body, but also must *advocate for or against* such elected official or position. Contrary to Plaintiffs' suggestion, it is not enough to merely reference an issue without also taking a stance on a position espoused by an elected official or an administrative or legislative body, relating to the outcome of some legislation, rule, regulation, hearing or decision by such body.

appearance thereof, and gathering the data necessary to enforce" existing laws. *McConnell v. FEC*, 540 U.S. 93, 196 (2003), *overruled in part on other grounds*, *Citizens United v. FEC*, 558 U.S. 310, 366 (2010) ("*Citizens United I*"); *see also Taylor*, 582 F.3d at 14-15 (noting important governmental interests served by after-the-fact disclosure requirements); *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 57 (1st Cir. 2011) (same).

Applying these two fundamental precepts, the Supreme Court and circuit courts have invariably upheld laws mandating after-the-fact donor disclosure reporting requirements, including those unrelated to elections or campaigns. *See Taylor*, 582 F.3d at 9-10 (collecting after-the-fact donor disclosure reporting cases); *Madigan*, 697 F.3d at 470 n.1 (same).

Ignoring these cases, Plaintiffs instead rely on decisions from the Seventh and Eighth Circuits upholding First Amendment challenges to laws imposing comprehensive PAC-style regulatory regimes, rather than simple donor disclosure laws analogous to New York's Disclosure Provisions. In *Wisconsin Right to Life, Inc. v. Barland*, 751 F.3d 804 (7th Cir. 2014), the challenged statute "impose[d] full-blown PAC duties" on non-PAC entities, including an "elaborate regulatory scheme" that included not only disclosure requirements but also registration and recordkeeping requirements, mandatory attribution and disclaimers in communications, and statutory limits on contributions and expenditures. *Id.* at 810, 841; see State Opening Br. at n.21. In *Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864 (8th Cir. 2012), the court distinguished the challenged Minnesota law from donor disclosure requirements subject to exacting scrutiny, doubting that the Supreme Court "intended exacting scrutiny [rather than strict scrutiny] to apply to laws such as [Minnesota's], which subject associations that engage in minimal speech to 'the full panoply of regulations that accompany status as [PAC].'" *Id.* at 875 (quoting *FEC v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 262 (1986)). Finally, in *Iowa Right to Life Committee, Inc. v. Tooker*, 717 F.3d 576 (8th Cir. 2013), the court struck down a portion of the challenged Iowa law because it imposed PAC-style

reporting requirements on non-PAC entities that were "perpetual" and "ongoing" regardless of a specific entity's purpose and "regardless of whether it ever makes more than a single independent expenditure." *Id.* at 597. Cases involving challenges to state laws imposing PAC-style reporting requirements on non-PAC entities are simply not relevant to this case, where the challenged law imposes a far less burdensome after-the-fact donor disclosure requirement.

The Plaintiffs' case is further weakened because any burden imposed by the disclosure requirement is speculative.[4] There is no evidence properly before the Court supporting the proposition that the Disclosure Provisions would have any chilling effect on speech. The only evidence adduced by the Plaintiffs on this point are statements by their own current and former employees stating that unnamed donors told them that they might not donate if their identities were made public – statements Plaintiffs are obviously offering for the truth of the matter asserted. *See, e.g.,* Pl.'s Rule 56.1 Statement ¶¶ 26-30, 83. The Court should not consider these anonymous hearsay statements on summary judgment.[5] *See* Local Civil Rule 56.1(d) (facts asserted must be based on "citation to evidence which would be admissible"); *Epstein v. Kemper Ins. Cos.*, 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002) (Berman, J.) ("Statements in an affidavit or Rule 56.1 statement are

---

[4] Plaintiffs fail to carry their burden of establishing that the Disclosure Provisions will impose any real administrative burden on their First Amendment rights. State Opening Br. at 29. Plaintiffs' vague and conclusory assertions of additional "compliance costs" (*see, e.g.*, Gottbaum Aff. (ECF No. 145) ¶ 9) are insufficient. *See McConnell*, 540 U.S. at 239-40 (rejecting burden argument where data required by disclosure law "should prove readily available"). Additionally, the issue is not ripe for resolution on a facial challenge because the specifics of the disclosure, and thus the extent of any burden, will be determined by regulations that do not exist yet. *Cf. id.* at 242 (declining to rule on administrative burden challenge to even the most onerous new disclosure requirement before enactment of implementing regulations).

[5] Plaintiffs cite to *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454 (S.D.N.Y. 2011), for the proposition that the Government's hearsay objections are insufficient. Pls. Reply at 14 n.14. Their reliance on *Senno* is misplaced. In 2010, the Federal Rules of Civil Procedure were amended to add Rule 56(c), which expressly provides that "[a] party may object that the material cited to support . . . a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The *Senno* court did not discuss or otherwise refer to the 2010 Amendment.

inappropriate if they are not based on personal knowledge, contain inadmissible hearsay, are conclusory or argumentative, or do not cite to supporting evidence."). Without any admissible evidence of a chilling effect, the assertion that the Disclosure Provisions will impact donors' First Amendment rights is supported only by the Plaintiffs' say-so. That is not sufficient to carry a facial challenge against a statute that advances the same compelling interests identified in *Buckley*, *McConnell*, and *Citizens United I*. *See Doe v. Reed*, 561 U.S. 186, 201 (2010) (rejecting facial challenge where plaintiffs "provided us scant evidence or argument beyond the burdens they assert disclosure would impose").

Instead of addressing head on the relevant after-the-fact donor disclosure cases discussed in the government's opening brief, Plaintiffs double down on their position that *Buckley* and its progeny is "a line of inapposite Supreme Court cases." Pls. Reply at 2. They contend that the Court should narrowly construe the *Buckley-McConnell-Citizens United I* triumvirate to apply only in the context of disclosure requirements tied to an election campaign, going so far as to boldly claim that "no court has ever held that there is a compelling or substantial interest in regulating 'speech about issues,' with no tie to an election in either subject matter or temporal proximity." Pls. Reply at 9 (quoting *Independence Inst. v. FEC*, 216 F. Supp. 3d 176, 187 (D.D.C. 2016), *aff'd*, 137 S. Ct. 1204 (2017)). *Harriss* and numerous other cases upholding after-the-fact disclosure requirements applicable to lobbyists that have no tie whatsoever to an election put the lie to Plaintiffs' position. State Opening Br. at 22-24 (discussing lobbyist disclosure requirement cases).

Plaintiffs ignore the importance of *Harriss,* relegating it to a single footnote in their brief in which they argue that the case set "constitutional limits" that restrict lobbying disclosure laws to "direct communication with members of Congress on pending or proposed federal legislation." Pls. Reply at 9 n.12. Their position is at odds with *Harriss* itself, which specifically contemplated that broader lobbying disclosure rules would be passed in the future. *See Harriss,* 347 U.S. at 620 (noting

that a more expansive disclosure regime was "for Congress to accomplish by further legislation").  It is also at odds with a wealth of case law developed in the many decades since *Harris* upholding state and federal lobbyist disclosure requirements much broader than the 1946 statute at issue in that case.  *See, e.g.*, *Taylor*, 582 F.3d at 6-7, 6 n.2, 29 (upholding legislation including "a more expansive definition of lobbying" covering communications with legislative and executive branch officials throughout the lawmaking process); *Fla. League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 461 (11th Cir. 1996) (upholding lobbying disclosure statute and noting that compelling interest in public disclosure "continue[s] to apply when the pressures to be evaluated by voters and government officials are 'indirect' rather than 'direct'"); *Minn. State Ethical Practices Bd. v. Nat'l Rifle Ass'n of Am.*, 761 F.2d 509, 513 (8th Cir. 1985) (upholding Minnesota lobbying disclosure law even when applied to a private association communicating with its own members).

Moreover, Plaintiffs' erroneous reading of *Harris* misses the point.  In sweeping language, the Supreme Court recognized in *Harris* the important role served by disclosure requirements – wholly outside the context of an election – in providing information about "who is being hired, who is putting up the money, and how much."  347 U.S. at 625.  Numerous circuit courts have relied on *Harris*, as well as the *Buckley* line of cases, to uphold lobbyist disclosure laws requiring that information be disseminated to the general public about who is speaking in issue advocacy communications unrelated to elections.[6]  Plaintiffs' failure to engage in any meaningful way with

---

[6] Federal courts have repeatedly upheld lobbying laws, including New York's, that provide for disclosure to the public as well as to the government, noting the importance of lobbying disclosure to ensuring educated decision-making by the public and to combatting the appearance of corruption. *See, e.g., Comm'n on Indep. Coll's & Univ's v. N.Y. Temp. State Comm'n on Regulation of Lobbying*, 534 F. Supp. 489 (N.D.N.Y. 1982) (upholding New York's lobby law and declaring that it "serves to apprise the public of the sources of pressure on government officials, thus better enabling the public to access [sic] their performance"); *Nat'l Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 33, 52-54 (D.D.C. 2008) (discussing Congressional desire to inform public of lobbying information and declaring that interest to be compelling), *aff'd*, 582 F.3d 1 (D.C. Cir. 2009).

*Harris* or these circuit court decisions does not make them go away.[7]

Finally, the Second Circuit has expressly rejected Plaintiffs' contention that the term "issue advocacy" as used in Supreme Court jurisprudence is limited to "speech that seeks to advance the election or defeat of a candidate" made in the period immediately before an election.  Pls. Reply at 9. As explained in *Vermont Right to Life Committee, Inc. v. Sorrell*, 758 F.3d 118 (2d Cir. 2014), "the Constitution does not require disclosure statutes to be limited to groups having 'the major purpose' of nominating or electing a candidate."  *Id.* at 136.  "When the *Buckley* Court construed the relevant federal statute to reach only groups having 'the major purpose' of electing a candidate, it was drawing a statutory line. . . .  It was not holding that the Constitution forbade any regulations from going further."  *Id.* (citations omitted).

## III.   New York's Disclosure Provisions Are Substantially Related To Important Government Interests

As a threshold matter, contrary to Plaintiffs' assertion, the government is not required to provide "studies, reports, hearings, or testimony" (Pls. Reply at 12) to establish the important interests served by legislation.  As established in the State's opening brief, the Governor's speech calling for disclosure, his press releases and bill memorandum, and the Assembly's statement in support are more than sufficient to meet the slight evidentiary burden required to establish the government's interests in the Disclosure Provisions.  State Opening Br. at 16-18.  Plaintiffs' citation to the Supreme Court's 1994 and 1997 decisions in *Turner Broadcasting System, Inc. v. FCC* are to no

---

[7] Plaintiffs' contention that the government cites two cases in footnote 17 of its opening brief as examples of laws that impose "disclosure requirements on nonprofits that engage in non-election-related speech" is a headscratcher.  Pls. Reply at 7.  As plainly stated in the text of the cited footnote, the government cites the cases as examples of laws regulating election-related speech by requiring disclosures from apolitical entities such as 501(c)(3)s, in direct contravention of Plaintiffs' assertion that no such laws exist.  For examples of laws that impose "disclosure requirements on nonprofits that engage in non-election-related speech," the government relies instead on all of the lobbyist disclosure requirement cases – such as *Harris* and *Taylor* – Plaintiffs choose to ignore.

avail.  Pls. Reply at 11-12.  As Judge Garland explained in *Taylor*:

> At bottom, this is not a case like *Turner Broadcasting*, where Congress' justification for a statute rested on 'economic' analysis that was susceptible to empirical evidence. What we have instead is simply a claim that good government requires greater transparency. That is a value judgment based on the common sense of the people's representatives, and repeatedly endorsed by the Supreme Court as sufficient to justify disclosure statutes.

*Taylor*, 582 F.3d at 16 (citations omitted).  Instead, this case is analogous to the Supreme Court's later decision in *Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377 (2000), where the Court found a state senator's single affidavit, along with the lower court's citation to three newspaper articles, sufficient to show that the state legislature was motivated by the same concerns about public corruption that were considered in *Buckley*. *Id.* at 393; State Opening Br. at 17; *see also Taylor*, 582 F.3d at 15 (limited legislative record was "no less substantial than the record the Court regarded as sufficient in *Nixon*").

The government has amply demonstrated that the Disclosure Provisions are substantially related to each of the three well-recognized government interests served by donor disclosure requirements – providing the public with information, deterring and avoiding any appearance of corruption, and gathering the data necessary to enforce existing laws.  *McConnell*, 540 U.S. at 196.

With respect to government's information interest, it is practically self-evident that a donor disclosure requirement bears a substantial relationship to a government's interest in providing the public with information about who is speaking on important political issues, as recognized by the litany of cases upholding after-the-fact donor disclosure laws.  *See Taylor*, 582 F.3d at 9-10 (collecting cases); *Madigan*, 697 F.3d at 470 n.1 (collecting cases).  There can be no serious dispute that as a result of the reporting obligations imposed by the Disclosure Provisions, the public will obtain information about who is funding issue advocacy communications, including donors to 501(c)(4)s and PACs through 501(c)(3)s.

Plaintiffs' attempt to dispute this obvious "fit" between the Disclosure Provisions and the

government's information interest fails for two reasons.  Pls. Reply at 5.  First, consistent with

Plaintiffs' erroneously constricted view of the *Buckley* line of cases, they cherry-pick from the

Governor's speech, press releases, and bill memorandum and the Assembly's statement in support

in an attempt to portray the government's information interest as one related solely to elections.  Pls.

Reply at 12-13.  In fact, there are numerous references in this material to the need for donor

disclosure requirements for nonprofits to prevent undue influence in politics in a broad sense,

without any specific reference to elections.  See AG's 56.1 Response (ECF No. 152) ¶¶ 112, 113,

125.  The government's information interest extends well beyond electioneering.  Second, because

the government's information interest relates broadly to any undue influence in politics (not just

elections) arising from undisclosed contributions, Plaintiffs' argument premised on the reach of the

Disclosure Provisions "extend[ing] far beyond . . . informing the electorate about campaign related

speech or avoiding corruption of candidates" (Pls. Reply at 10) falls flat.  Because the government's

information interest extends beyond preventing undue political influence during an election cycle, it

is entirely appropriate that the Disclosure Provisions similarly extend beyond campaign speech and

elections.  This substantial relationship to the government's "information interest alone is sufficient

to justify application" of New York's Disclosure Provisions without the need to consider the

government's other interests.  *Citizens United I*, 558 U.S. at 369.   To the extent the Court's considers

those other interests, the government has established that those too bear a substantial relation to the

Disclosure Provisions.

    With respect to the government's interest in preventing corruption and the appearance of

corruption, the government showed in its opening brief how the Legislature and Governor designed

the disclosure requirement to prevent the corrupting influence of undisclosed contributions in New

York politics.  State Opening Br. at 15-16 (quoting from Assembly statement in support about the

law preventing "organizations from corrupting the political process and utilizing funds that are not

intended for political purposes" and "restoring the public's faith and trust in our political process"). As with the government's information interest, the relation between disclosing donor names and preventing the corrupting influence of such contributions is self-evident.  For example, information about who is funding issue advocacy in support of an elected official's proposed legislation may shed light on whether that official has provided any *quid pro quo* favors to that donor.  *See Independence Institute*, 216 F. Supp. 3d at 185-88.

With respect to the government's interest in gathering data to enforce existing laws that govern the conduct of tax-exempt organizations, the Second Circuit has already recognized "the importance of the government's interests in ensuring organizations that receive special tax treatment do not abuse that privilege and of its interest in preventing those organizations from using donations for purposes other than those they represent to their donors and the public."  *Citizens United v. Schneiderman*, 882 F.3d 374, 382 (2d Cir. 2018) ("*Citizens United II*").

Finally, Plaintiffs' complaints about the "reach" of the Disclosure Provisions (Pls. Reply at 6) are misplaced under the exacting scrutiny standard, which requires not that the law be narrowly tailored, but rather that the law bear a substantial relation to the government's interests.  *See Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1013 (9th Cir. 2010) ("[t]he government need not . . . employ the least restrictive means to satisfy its interest in providing the electorate with information; it need only ensure that its means are substantially related to that interest."); *see also Worley v. Fla. Sec. of State*, 717 F.3d 1238, 1244 (11th Cir. 2013) (argument for application of strict scrutiny requirements is "in conflict with cases from every one of our sister Circuits who have considered the question, all of whom have applied exacting scrutiny to disclosure schemes").  As the Second Circuit noted in *Citizens United II*, "if a substantial number of likely applications of the statute correspond to an important interest, a minority of potentially impermissible applications can be overlooked." *Citizens United II*, 882 F.3d at 383 (citing *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015),

11

*David v. FEC*, 554 U.S. 724, 744 (2008), and *Buckley*, 424 U.S. at 64).[8]

But even if the Court were to inquire into whether the Disclosure Provisions are narrowly tailored, it should find that they are; Plaintiffs' contention that the law's scope "leads to absurd results" is without merit.  Pls. Reply at 6.  As argued above, the Disclosure Provisions need not be limited to communications that name "a candidate for office" or to entities that have "as a major purpose seeking the election or defeat of a candidate" (Pls. Reply at 11) because the government's information interest is not limited to electioneering.[9]  In the wake of *Citizens United I*, donors have used heretofore disclosure-exempt 501(c) organizations to carry out their political agendas without attribution.  Proposed Brief *Amicus Curiae* of Governor Andrew M. Cuomo, ECF No. 156-1 at 5.  The Governor and the Legislature intended § 172-f to prevent the flow of undisclosed contributions by requiring donor disclosure triggered by a 501(c)(4)'s funding of advocacy communications – the means by which 501(c)(4) organizations carry out their anonymous donors' political agendas.  In addition, since donors can advance their political agendas without attribution by donating to affiliated disclosure-exempt 501(c)(3) and 501(c)(4) organizations that work hand-in-hand to use undisclosed contributions for issue advocacy, § 172-e imposes disclosure requirements on 501(c)(3) entities that provide in excess of a threshold level of in-kind donations to a subset of 501(c)(4)s that engage in sufficient lobbying activity to require the 501(c)(4)s to file a source of funding report with JCOPE.[10]  N.Y. Exec. Law §172-e.1(a)-(d), 2(a); AG's Rule 56.1 Statement ¶ 11.

---

[8] Contrary to Plaintiffs' contention, the Second Circuit in *Sorrell* did not adopt a "narrowly tailored" test for disclosure requirements.  Pls. Reply at 10.  Rather, *Sorrell* reaffirms that disclosure requirements are subject to exacting scrutiny, "which 'requires a substantial relation between the disclosure requirement and a sufficiently important governmental interest.'"  758 F.3d at 133 (quoting *Buckley*, 424 U.S. at 366-67); *see also* 758 F.3d at 136 (discussing exacting scrutiny as an "intermediate scrutiny level" distinct from strict scrutiny).

[9] Because the Disclosure Provisions are not limited to electioneering and focus on 501(c)(3) and 501(c)(4) organizations rather than PACs or lobbyists, it is obvious that they serve different purposes and government interests than New York's existing campaign finance and lobbying laws.

[10] The applicable standard of review forecloses any challenge to the amount at which the Legislature

**IV.    In Light Of The Exemption Procedure, Plaintiffs Cannot Allege "Sufficiently Likely" Harms Necessary To Support An As-Applied First Amendment Challenge**

As the government established in its opening brief, the Court need not reach the issue of whether the Plaintiffs or their donors are sufficiently likely to face harm from disclosure because they can seek an exemption from public disclosure in accordance with the standard adopted by the Supreme Court in *NAACP v. Alabama*, 357 U.S. 449 (1958).  State Opening Br. at 30.  Plaintiffs counter that the exemption is "theoretical" and therefore of no consequence because the Charities Bureau has yet to promulgate regulations telling them how to apply for the exemption.  Pls. Reply at 14.  But that fact does not make the exemption, mandated by clear and unambiguous statutory language, "theoretical" as opposed to actual; the exemption, codifying the *NAACP* holding, is a critical element of the statutory scheme that cannot be altered or eliminated by regulation.  *See Util. Air Regulatory Grp. v. EPA*, 134 S.Ct. 2427, 2446 (2014) (reaffirming "the core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate").  Moreover, the Court has no basis upon which to conclude that the Plaintiffs necessarily will not qualify.  *See Corey H. v. Bd. of Educ. of City of Chicago*, 534 F.3d 683, 689 (7th Cir. 2008) (court would not rule on validity of newly imposed requirement where waiver provision existed and "waiver procedure and criteria" had not yet been formulated); *Amundson v. Wis. Dep't of Health Servs.*, 721 F.3d 871, 874 (7th Cir. 2013) ("If plaintiffs' fears come to pass, they can return to court.  If the fears do not come to pass, however, there is no legal injury, and an opinion today would be advisory.  Wisconsin maintains that it has safeguards in place that will prevent any plaintiff from being [harmed].  The complaint does not give a sufficient reason to think that these will fail.").

Nor should Plaintiffs be heard to complain that regulations have not yet been promulgated

---

set the threshold for disclosure.  Courts treat the setting of reporting thresholds as a fundamentally legislative question, with disclosure levels upheld so long as they are not "wholly without rationality."  *McKee*, 649 F.3d at 60 (citing *Buckley*, 424 U.S. at 83).

since the government put the rule-making process on hold pending the resolution of their constitutional challenges based upon their unwavering position from the outset of this litigation that nothing could be done to address any of their issues through regulations.  AG 56.1 Statement at ¶¶ 23-24 (citing ECF No. 66 at 12:23-13:5; 14:3-4).  Plaintiffs most definitely acquiesced in this approach, having voiced no opposition to it.  And why would they?  They have no burning need to apply for the exemption given that the State agreed to temporarily stay enforcement of the Disclosure Provisions as soon as they initiated this action.  AG 56.1 Statement at ¶ 20.  Unless and until Citizens Union and the ACLU are denied an exemption under such regulations, they face no "clear and present danger" of harm necessary to support an as-applied First Amendment challenge. *Citizens United II*, 882 F.3d at 385.

Plaintiffs contend that they face harm now because exemptions will be granted only after the close of the applicable reporting period.  But as the government previously noted, "nothing in § 172-e(3) or § 172-f(3) suggests that the process for seeking an exemption would necessarily conclude after, rather than before, the start of the reporting period for which the exemption would apply.  Nor do the provisions specify the number of reporting periods for which an exemption shall be effective."  State Opening Br. at 26.  Plaintiffs respond that exemption "proceedings" cannot even begin until after a reporting entity files its funding reports following the close of the reporting period.  Pls. Reply at 15.  Nothing in the statute says that is the case.

## CONCLUSION

For the reasons set forth above and in its opening brief, the State respectfully requests that the Court deny Plaintiffs' motion for summary judgment, grant Defendant's cross-motion for summary judgment, dismiss these consolidated actions in their entirety, and grant such other and further relief as the Court deems just and proper.

14

Dated: New York, New York
      August 2, 2018

                                       BARBARA D. UNDERWOOD
                                       Attorney General
                                       State of New York

                                       By:    */s/ Andrew Amer*
                                       Andrew Amer
                                       Special Litigation Counsel
                                       James M. Thompson
                                       Assistant Attorney General
                                       28 Liberty Street
                                       New York, NY  10005
                                       (212) 416-6127

                                       *Attorneys for Defendant The Attorney General of the*
                                       *State of New York*